[No. 10496.   Department One.   December 12, 1913.]

## C. D. LEWIS, *Plaintiff and Appellant*, v. W. S. DEAN, *Defendant and Appellant.*[1]

APPEAL — REVIEW — FINDINGS — TRIAL DE NOVO.   The supreme court must try the case upon the facts *de novo*, under Rem. & Bal. Code, § 1736, providing that in actions that were tried to the court, where a statement of facts or bill of exceptions was filed, the evidence of facts shown by the bill or statement shall be examined by the supreme court *de novo* and the cause determined on the record.

CONTRACTS—JOINT VENTURES—LIABILITY FOR LOSSES—EVIDENCE TO ESTABLISH—SUFFICIENCY.   The plaintiff failed to sustain the burden of proving a contract by defendant, a stock broker, to share profits and losses in stock jobbing speculations, under an agreement to take plaintiff's money and "use as he did his own" on a profit sharing basis, where plaintiff's evidence to the effect that defendant was to share the losses or return the money was full of inconsistencies, and flatly contradicted by defendant's evidence.

Cross-appeals from a judgment of the superior court for King county, Ronald, J., entered October 20, 1911, upon findings in an action on contract tried to the court.   Reversed on defendant's appeal.

*Peters & Powell,* for plaintiff.

*Ira Bronson* and *J. S. Robinson,* for defendant.

GOSE, J.—This is a suit upon an alleged oral contract. The case was tried to the court and both parties have appealed.

The statute, Rem. & Bal. Code, § 1736 (P. C. 81 § 1225), puts the burden upon us of trying the case upon the facts *de novo*.   It provides that:

¹Reported in 137 Pac. 341.

"In actions legal or equitable, tried by the court below without a jury, wherein a statement of facts or bill of exceptions shall have been certified, the evidence of facts shown by such bill of exceptions or statement of facts shall be examined by the supreme court *de novo,* . . . and the cause shall be determined by the record on appeal . . ."

The burden of proof is upon the plaintiff to establish his case by a preponderance of the evidence. This we think he has failed to do. In most respects, there is a direct conflict in the testimony. The material facts, which are few and simple, are these: The plaintiff was a man of business experience, engaged in buying and selling timber lands. The defendant, while not a broker, bought and sold stocks on margin. The two were intimate acquaintances, occupying the same office room. The plaintiff became interested in the defendant's speculations, and in November, 1908, gave him $250 to "use as he did his own." Plaintiff says they agreed to share the profits, and "my understanding was he was to assume one-half of the losses." This the defendant denies. His testimony is that, if losses should occur, there would be no division of the profits until the losses were recouped. From the $250, large profits were reaped; and in June the plaintiff advanced $1,500, and in August $250 more, which the defendant placed in stocks upon margin. Some small profits were realized from these sums. In December, 1909, the price of stocks declined and serious losses were threatened. The plaintiff says, that he then asked defendant if he was going to bear any losses, and that the defendant said he was not; that he (the plaintiff) then "repeatedly" told the defendant that, if he was not going to share the losses, "I would have him immediately dispose of the stock and save what I could out of the investment." But he later says, "I don't know that I did" tell him that. The defendant says the plaintiff neither asked him to close the account nor complained because he declined to bear a part of the losses. Plaintiff further says that defendant then promised him that, if he would leave him alone, he

thought stocks had reached the bottom and he would return the money with interest. This the defendant flatly denies. He says, however, that he told the plaintiff that, from past experience, he believed that stocks had reached the bottom and would advance, and that they would "get out all right," and that he did not make a guaranty or promise. This constitutes the agreement upon which the plaintiff relies.

The testimony, taken as a whole, fairly shows that, at the time the plaintiff claims the defendant made this promise, stocks had materially declined. The plaintiff says that the defendant represented that they had then dropped about five points, which would be $1,000. Following the conversation, the defendant continued to handle the stocks. They failed to advance, and by June, 1910, the defendant testifies that the money was lost and that he had advanced about $160 to protect the plaintiff's margins. The defendant asserts that, in January, 1910, he advised the plaintiff that his account was about exhausted. This the plaintiff denies. The plaintiff made no demand for a return of his money until December, 1910, when he brought suit for $2,000. The court gave judgment for this amount less $357.75, profits which had theretofore been paid to the plaintiff.

The defendant at all times kept plaintiff's accounts separate from his own, and the books were in the office and at all times accessible to the plaintiff. The plaintiff admits that, after the alleged agreement to purchase the stock, the defendant frequently reported to him the condition of the stock market, and says that he on several occasions asked him to advance more money to protect the account. The defendant admits that he continued to report the condition of the stock market to the plaintiff, but denies that he ever asked him to advance money. The plaintiff says that, after the stock declined in December, 1909, the defendant called upon him three times to advance additional money; that he answered that he would not put up any more; that "I was content to let the

money be returned to me." He was then asked, "What did you say to him?" and answered:

"I refused. I simply refused to put up any more money. Q. What reason did you give? A. I don't know that I expressed any reason. Q. You never referred to the fact, then, did you, that you didn't have to because he was to pay you back the money? A. I don't recall referring to that, no sir, Q. Why would he ask you to put up money if he had made that agreement with you that you just referred to? A. I don't know unless the stock market went down, kept going down, and I didn't know his object in doing that, but he asked me on two or three occasions to put up additional money."

From what has preceded, it will be observed that the plaintiff first says that he repeatedly told the defendant that, if he did not take his stock, he would require it to be sold, and later says that he did not tell him. He first asserts that, when called upon to advance money after the alleged sale, he told the defendant that he was content to let the money be returned to him, and again he says that he did not tell him anything about it. As opposed to these inconsistencies, the defendant's testimony seems to ring true. A careful reading of the record has convinced us that the defendant, in December, 1909, when the alleged promise was made, while realizing that stocks had materially declined, was optimistic as to the future, and that he merely said to the plaintiff that he believed stocks had reached the bottom and that they would recover, without any promise to return the plaintiff's money. The query is, if stocks had materially declined and the stock market was in bad condition, why should the defendant have promised the plaintiff to return his money which would be in effect to take his stock at a price materially in excess of its value?

We have not overlooked the fact that the trial court found that, at the time of the alleged sale, the price of the stocks had not declined. We are persuaded that the trial court attached too much importance to the paper value of the stocks as shown upon the defendant's books. They were carried on

his books at their purchase price, and do not show the daily market fluctuations. We think the plaintiff has failed to sustain the burden which the law puts upon him; that is, that he has failed to prove the contract which he alleged by a preponderance of the evidence.

The judgment is reversed, and the cause remanded with instructions to dismiss.

CROW, C. J., ELLIS, CHADWICK, and MAIN, JJ., concur.