[No. 11376. Department One. December 12, 1913.]

L. A. BORDE, *Appellant*, v. WILLIAM KINGSLEY, *Respondent*.[1]

CORPORATIONS—STOCK—SALE—FRAUD—TREASURY STOCK—ESTOPPEL. Where the promoter of a corporation admitted that stock was issued in his name to be held as treasury stock and sold for development purposes, it is in law, treasury stock, and the promoter cannot assert that the purchaser of stock from him is estopped to set up that it was sold as treasury stock, because issued in the name of the promoter and marked "common."

SAME—FRAUD IN SALE OF STOCK—DUTY TO INVESTIGATE. The failure of the purchaser of mining stock to make a personal investigation as to representations made by the vendor does not prevent a rescission by the vendee for fraud, where the subject-matter was not at hand and the facts were within the knowledge of the vendor and could not be ascertained by the vendee without trouble and expense.

SAME—SALE OF STOCK—FRAUD—RESCISSION BY VENDEE. The purchaser of mining stock is entitled to rescind for fraud where the stock was purchased upon representation that the money paid would be used in patenting claims, upon which the company held an option, but this was not done, and the money was diverted to other expenses and the claims lost, there never having been any intention to patent the claims.

MINES AND MINERALS—MINING CORPORATIONS—STOCK—ISSUANCE—SUBSCRIPTIONS—NECESSITY. The earlier acts providing that no actual subscription to the stock of a mining corporation need be made where the stock consists of the aggregate valuation of the whole number of feet, shares, or interest in a mining claim, and making transfer of the title to the claim the legal equivalent for

[1]Reported in 136 Pac. 1172.

stock subscriptions, must be construed as in *pari materia* with the later act, Rem. & Bal. Code, § 3677, providing that no corporation shall do business until the whole amount of its capital stock has been subscribed; hence the stock of a mining corporation must be subscribed or the company must be possessed in its own right of a mining claim for the working and development of which it was formed, or the issue of its stock will be against public policy and in contravention of Id., § 3677 *et seq.*, relating to the organization of corporations.

APPEAL—REVIEW—FINDINGS. Upon a trial *de novo* on appeal, the supreme court will go into the record to ascertain if the findings are sustained by the preponderance of the evidence, and if not, the judgment will be reversed, and will sustain the judgment only when the court is satisfied that the evidence does not preponderate against the findings.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered February 10, 1913, upon findings in favor of the defendant, in an action for damages for fraud on the sale of corporate stock, tried to the court. Reversed.

*Herchmer Johnston* and *Edward N. Sears*, for appellant.
*Edwin H. Flick* and *C. E. Hughes*, for respondent.

CHADWICK, J.—The court below made findings in favor of the respondent. The facts are somewhat conflicting, and to undertake to state them in detail would put upon us the burden of reciting the respective contentions of the parties. We find the facts to be that respondent held an option upon ten mining claims and a mill site, located on the Nespelem river, in Okanogan county. In February, 1909, he organized a mining company. He made himself president of this company, and was at all times the moving spirit and directing genius of its affairs. He prepared a communication directed to the company in which he proposed to convey all of his interest in the option in consideration of the issuance to him of the entire stock of the company. No conveyance or formal assignment was ever made. The minutes of the meeting held at or about the time the company was organized show that

all but 25,000 shares of the stock was common stock, the 25,000 being reserved as preferred stock. It is also stated by respondent that some 60,000 shares were to be held by him as a trustee for the benefit of the company, and that this stock was to be sold for development purposes. If this is true, it would be in law treasury stock. There is no evidence that the corporation ever had any funds or realized any money from any source. Payments were due on the option from month to month.

One Frantz was either a sales agent for the company or was interested as a stockholder, it matters not which; and he, being informed of the fact that the company was in need of funds and that appellant, whom he had known for a long time, was possessed of some ready money, solicited him to purchase the stock of the company. Frantz accordingly arranged for a meeting in his office, and upon appellant's coming, he telephoned respondent to come over and present the matter to appellant. This respondent did, and a sale of 20,-000 shares of the stock of the company at ten per cent of its par value was consummated. The representations made at the time were that the money was needed for patenting the claims; that they were subject to patent, a letter being shown to appellant by respondent purporting to come from the commissioner of the general land office; that the company had contracted for building a smelter; that it would have a valuable power site, and had entered into a contract with the San Marino Mining Company for smelting its ores. It was also represented to appellant that $200,000 had been offered by someone in the east for the property, and that the Tacoma Smelting Company had offered $75,000 for fifty-one per cent of the stock. Plaintiff was led to believe that he was purchasing treasury stock and that his money would be used for the purposes specified. The company afterwards became defunct, and litigation arose between Frantz and respondent. Upon the trial of that action, appellant discovered for

the first time that he had not been given the stock of the company, but had received a block of Kingsley's stock.

It is insisted that the stock certificate being in the name of Kingsley and being water marked with the word "common," the appellant cannot now be heard to say that he did not know these things. However this might otherwise be, it cannot now be urged by respondent, for he himself has sworn that he held, in his own name and as trustee, a block of stock to be sold and used for the benefit of the corporation.

The record does not disclose the truth of the statement that $200,000 had been offered for the property, or that $75,000 had been offered for fifty-one per cent of the stock. There is nothing in the record to show that the San Marino Mining Company, a company owned or controlled by respondent, was a going or active concern or that its contract was of any value. After much solicitation upon the part of appellant, respondent sometime thereafter delivered to him one of his own certificates calling for common stock, endorsed in blank.

The trial judge found that the parties were dealing at arm's length; that the sales were negotiated and closed by Frantz, and that defendant made no false or fraudulent representations; that he did not solicit plaintiff to buy any stock from the company; that plaintiff well knew that the company had only an option to purchase the property and that it could be kept alive only by payments made from month to month; that all of the moneys received by defendant were applied, as agreed with appellant and as fully understood by him, toward keeping the said option alive and toward perfecting title and not otherwise; that respondent did not appropriate any of the money to his own use. The court further found that plaintiff had the means at hand to investigate the truth of any statement made concerning the status of the title or property, and that appellant put no reliance upon any representation or statement that might have been made

by respondent. It further found that respondent practiced no fraud or deception upon appellant.

Appellant's contention is sustained, not only by the number of witnesses, but by clear and convincing evidence. Respondent makes no substantial denial of the representations he is said to have made. From the questions asked of appellant upon the witness stand and from the argument made by counsel, it is apparent that respondent's main reliance, in so far as the facts are concerned, rests upon the contention that appellant might have gone to Nespelem and investigated the property and the title for himself; that he did not ask for an inspection of the stock book, the minute book or books of account; and that he did not make any inquiry about the title to the property.

This court has frequently held, where the subject-matter of the contract is not at hand and the facts are within the knowledge of the vendor and could not be ascertained by the vendee without trouble and expense, that he is not bound to make an independent investigation, but may rely on the representation of his vendor. These cases are collected in *Bell v. Jovita Heights Co.*, 71 Wash. 7, 127 Pac. 289; *Conta v. Corgiat*, 74 Wash. 28, 132 Pac. 746. This disposes of appellant's failure to make an independent inquiry as to the title.

As for the other objections, it is enough to say that inspection of the stock, minute, and books of account would not have revealed anything to negative the statements of respondent or to have put appellant on his guard. But, as we read the record, the state of the title is not of so much consequence. The title, in so far as it could be represented by an option, was in respondent with an unilateral contract or agreement to assign it to the company. Now, let us assume that the company did own the option. Appellant's money was paid, we find it to be the fact, under an understanding that it would be used in patenting the mining claims. This was not done, nor was there any pretense of doing it. A part of it,

either one hundred or two hundred dollars, was used to pay an attorney's fee, four hundred dollars was paid out as a commission to the sales agent of the company for finding appellant and his money, and the balance was used to take up monthly payments due under and to keep the option alive. When it is known that, in so far as the record shows, the company never had a dollar in money that it could call its own except the money paid by appellant, it will not be contended that any sane man having knowledge of the facts would have thrown his money into such a rat hole. It is said that, notwithstanding these things, appellant cannot complain, because respondent has not only accounted for the money he obtained from appellant, but has shown that he put enough of his own funds into the option payments to more than make up the diversion of appellant's contribution to the treasury. This may be answered in two ways: first, appellant was not dealing with respondent but with the company, and respondent's voluntary contribution, all of which might have been, and no doubt would have been, recovered if other stock buyers had been found, cannot be made of concern to him; and second, the money was paid for a specific purpose that was not carried out or attempted to be carried out. We feel warranted in saying, our assertion being based on the evidence of the respondent himself, that there was never any intention of patenting the claims at that time.

Assuming that the company is a separate entity and that the stock delivered to appellant was in fact treasury stock, it is our judgment that appellant is entitled to recover from the respondent upon the theory that the stock was of no value and was issued in defiance of a sound public policy, and in contravention of the statute laws of this state. Rem. & Bal. Code, § 3677, and subsequent sections, provide for the organization and management of corporations. The corporations enumerated include those organized to carry on a mining business. This section of the law was originally passed in 1866. At the same time and in the same act, the

legislature provided that, where the amount of the capital stock of a corporation consists of the aggregate valuation of the whole number of feet, shares, or interest in a mining claim, that no actual subscriptions to the capital stock of such corporation shall be necessary. The transfer of the title to the mining claim is made a legal equivalent for the stock subscriptions provided for in the first section of the act. Rem. & Bal. Code, § 3677. The law, after various enactments, is to be found in Rem. & Bal. Code, § 7347 (P. C. 405 § 65). In 1886 (Laws 1886, page 84), it was provided that no corporation formed under § 3677 of the code, shall commence business until the whole amount of its capital stock has been subscribed. It will be seen, when we take into consideration the history of our statute providing for the incorporation of companies to do business in this state, that the acts referred to must be construed as in *pari materia*. It follows, then, that the stock of a mining company must be subscribed or the mining company must be possessed in its own right of a mining claim for the working and development of which the corporation has been formed. In the case at bar, there was no subscription of the stock; neither was the corporation possessed of any property. Its stock represented nothing, and was insufficient to support a consideration for the money paid by appellant to respondent. We think this case falls within the rule stated in 20 Cyc. 60:

"A false and fraudulent representation of material facts which relate to the property of a corporation and which necessarily affect the value of the corporate stock constitutes a cause of action against the party who, by means of such misrepresentations, induces another to purchase stock in the corporation; and the situation is exactly the same as if the purchase were of the corporate property with regard to which the representation is made."

Without further citation of authority, our holding is that the plaintiff was induced to part with his money upon representations that were false and fraudulent, under an understanding that he was to receive the treasury stock of the

company and that it was to be put to a specific use; that he has not obtained that which he bought and paid for; and furthermore, that at no time, either before or since the sale of the stock to appellant, has the corporation owned any property of any kind or nature whatsoever; that its issue of stock was unlawful and at no time has it been of any value; that its circulation by respondent was an act of deceit for which he is liable to those dealing upon the faith of his representations.

Respondent also contends that this court has held that, where there is evidence to sustain the findings of the court in an action tried before the court without a jury, that the judgment will not be disturbed on appeal. He cites a number of cases which, upon casual consideration, may seem to sustain his contention.

It is to be regretted that many loose and inapt expressions have crept into our opinions. It has never been the intention of this court to sustain findings upon a scintilla of evidence, or because there may be some evidence sustaining the finding, or because a greater number of witnesses testified to the facts found by the trial judge than testified for the other side. The rule is that this court will go into the record for the purpose of finding out whether the findings are sustained by a preponderance of the evidence. If we find that they are not, we will reverse the judgment. If we find that they are, or from an inspection of the whole record we are unable to say that the evidence does not preponderate in favor of the appealing party, the trial judge having had the witnesses before him and marked their demeanor, we will sustain the findings and judgment. It would involve a task clearly beyond the time that any of us have to devote to it to go through the seventy-four volumes of our reports and select the cases in which we have referred to this subject. Neither would it serve any useful purpose. But it may be understood henceforth that this court will sustain the findings and judgment of the trial court when, and when only,

we can say that we are satisfied that the evidence does not preponderate against the findings.

The judgment is reversed, with instructions to enter a judgment in favor of the appellant.

CROW, C. J., GOSE, MAIN, and ELLIS, JJ., concur.