[No. 11362.   Department One.   December 26, 1913.]

GEORGE BAKER et al., *Respondents*, v. YAKIMA VALLEY
CANAL COMPANY, *Appellant*.[1]

MECHANICS' LIENS — PERSONS ENTITLED — SUBCONTRACTOR OR MA-
TERIALMEN—LABORERS EMPLOYED BY MATERIALMEN—STATUTES—CON-
STRUCTION.   One who contracts to furnish, from his own screening
plant, at so much per yard, all the sand and gravel needed for ce-
ment work by a contractor on an irrigating canal, is not a subcon-
tractor, but a materialman, and men employed by and looking to
him for their pay are not entitled to a lien as laborers performing
work on the canal; in view of the distinction between subcontract-
ors and materialmen made by Rem. & Bal. Code, § 1129, giving liens
to every person performing labor upon or furnishing materials to be
used in the construction of the canal, at the instance of the owner
or his agent, and making contractors, subcontractors etc. agents of
the owner; since no lien is accorded to laborers of materialmen,
who are not made agents of the owner.

SAME—MATERIALMEN—NECESSITY OF NOTICE—SUBROGATION.   Un-
paid laborers working for a materialman could not be subrogated
to the right of a materialman's lien, where no notice in writing was
given to the owner of the furnishing of the materials as required by
3 Rem. & Bal. Code, § 1133.

APPEAL—REVIEW—FINDINGS.   In actions tried to the court there
is a trial *de novo* on appeal, and the findings will be sustained only
when supported by a fair preponderance of the evidence.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered October 7, 1912, upon findings in favor of the plaintiffs, in an action to foreclose labor liens.   Reversed.

[1]Reported in 137 Pac. 342.

*Englehart & Rigg* and *H. J. Snively,* for appellant.

*Roberts & Udell,* for respondents.

ELLIS, J.—The plaintiffs in this action seek to establish liens upon the irrigating canal of the defendant Yakima Valley Canal Company, for labor performed by them for the defendant Betts in screening sand and gravel used by defendant Powell in reconstructing the canal.

The facts are simple and practically undisputed. The defendant W. F. Powell entered into a written contract with the defendant canal company to reconstruct approximately 11,-000 feet of its canal, according to certain plans and specifications, and at his own cost and expense, to perform all the work and furnish all the materials called for in the specifications, excepting the reinforcing steel. The work called for in the specifications was the excavation and grading of the foundations for the flume, and the construction of a reinforced concrete flume thereon, and, at one point, a concrete siphon. The defendant canal company owned the right of way upon which the canal was reconstructed. The work was done, and materials used were cement, sand, gravel and steel. The sand, gravel and cement were mixed together and, with the reinforcing steel, constituted the finished structure.

The evidence is too plain for controversy that the defendant W. C. Betts made an oral agreement with Powell to furnish sand and gravel at an agreed price of sixty-five cents a yard. Betts had his own screening machinery and sand and gravel bins, and was to deliver the materials in his own bins, from which Powell was to haul them to the place of construction. Betts set up his machinery at a certain sand bar, in the Natchez river, at a point about two hundred yards from the nearest point of the canal right of way, and about one-fourth of a mile from the place where the work of reconstruction was in progress. The plaintiffs were employed by Betts in scraping up, screening, and separating the sand and gravel, storing these materials in the bins, and in running

machinery for that purpose. As to the agreement with Betts, Powell testified: "He was to furnish me the sand and gravel for so much a yard in the bins at his machine." The witness Hillis Betts, son of the defendant W. C. Betts, testified that he did not know the particulars of the agreement, but that, as he understood it, his father was to furnish gravel for the work from the Natchez river, and that the plaintiffs were employed to scrape the gravel up into the elevator with slip scrapers; that the elevator carried it to a rotary screen, and the screen dropped it into the bins and bunkers, from which Powell's teams took it away. The defendant W. C. Betts, testifying to what his agreement was, said: "I was to deliver the gravel in the bunkers at the screen," and that he was to receive for it "sixty-five cents per yard in the bins at the machine." He also testified that he employed all of the plaintiffs in preparing the sand and gravel. There was evidence to the effect that the screening plant belonged to W. C. Betts. There was no evidence that either Powell or the canal company furnished it or had any interest in it. Betts testified that he had operated the same plant at other places, and that some of the plaintiffs had worked for him before in connection therewith.

Judgments by default were entered against the defendant W. C. Betts for the amounts due to the plaintiffs, the action was dismissed as to the defendant Powell, and a decree was entered establishing and foreclosing liens in favor of all of the plaintiffs, save one Burnett, upon the irrigating canal of the defendant canal company. From that decree, the defendant canal company prosecutes this appeal.

The respondents contend that W. C. Betts was a subcontractor, and as such, the statutory agent of the canal company in employing the laborers who screened the sand and gravel. The appellant insists that Betts was a materialman and had no part in the actual construction of the canal, and hence there was no basis in the facts for a statutory agency.

The statute under which these liens were claimed, Rem. &

Bal. Code, § 1129 (P. C. 309 § 53), so far as pertinent, reads as follows:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any . . . ditch, dyke, flume . . . or any other structure . . . has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter."

An analysis of this section, as it seems to us, clearly sustains the appellant's contention. The lien for labor is accorded for work performed upon the ditch or flume, and at the instance of the owner or his agent. No lien is accorded for labor performed in the preparation of materials being furnished by the materialman, and at the instance of the materialman. This seems plain from the language of the first clause of the section. All doubt, if there could be any, is removed by the next clause of the same section, which makes only the contractor, subcontractor, architect, builder, or person having charge of the construction, the agent of the owner for the purpose of establishing the lien. The statutory agency is confined to the persons named. A materialman is not one of them.

Betts employed all of the respondents. According to their own testimony, they performed labor for him alone. There was not a glimmer of evidence that the respondents did any work at the request of any one else. Neither of the respondents testified that he was employed by, or looked to either the canal company or to Powell for his pay. Neither Betts nor any of his employees had any part in the actual work of constructing the canal. Betts was clearly a materialman. *Finlay v. Tagholm*, 62 Wash. 341, 113 Pac. 1083. He was not

the contractor nor a subcontractor, architect or builder, nor did he have charge of the construction of the canal or any part of it.

"A subcontractor is one who takes from the principal contractor a specific part of the work, and the term does not include laborers or materialmen. *Farmers' Loan & Trust Co. v. Canada & St. Louis R. Co.*, 127 Ind. 250, 26 N. E. 784, 11 L. R. A. 740." *Young Men's Christian Ass'n v. Gibson*, 58 Wash. 307, 105 Pac. 766.

Betts merely furnished the sand and gravel used in the work, just as some one else furnished the cement, and still another the steel. If he was a subcontractor, then every materialman would fall within that class, and the distinction manifestly intended by the statute would be obliterated. He was not a statutory agent of the owner by any construction of the statute, however liberal. To hold that he was, would be to legislate, not to construe.

"If one who furnishes the sashes, doors, and glass for a building is a subcontractor, every materialman would fall in that class, and such construction would nullify the plain terms of the statute. The argument that the contract to furnish the material is an entirety and that it is difficult to comply with the statute, is one that should be addressed to another department of the state government. We are not responsible for the wisdom or the expediency of the law." *Finlay v. Tagholm*, 62 Wash. 341, 113 Pac. 1083.

See, also, *Monroe v. Clark*, 107 Me. 134, 77 Atl. 696, 30 L. R. A. (N. S.) 82. The statute makes, and preserves throughout, a distinction between materialmen and subcontractors. It accords a lien to both, but upon different conditions. The materialman must, within five days after the first delivery of materials, deliver or mail to the owner of the property a notice in writing that he is furnishing the materials. Laws of 1911, p. 376 (3 Rem. & Bal. Code, § 1133). It was testified and tacitly admitted that no such notice was delivered or mailed in this instance.

Even if it could be held that the laborers employed by

Betts might be subrogated to his right of lien as a ma-
terialman because their labor had gone into the materials (a
thing not decided because not before us), still, such a holding
would not avail them here, since the specific condition for a
lien in Betts' favor for the materials furnished was never per-
formed.    *Culbert v. Lindvall,* 73 Wash. 643, 132 Pac. 729.
Conceding that the legislature intended to provide a lien for
all laborers, it would still be manifest that, if these laborers
could have had a lien, it could only be as against Betts and
on his plant, under Rem. & Bal. Code, § 1149 (P. C. 309
§ 117), which gives a lien to laborers employed by a manu-
facturer on the manufacturing plant in which they are em-
ployed.    Whether Betts' plant was such a plant as would
properly fall within that section, we do not here decide, since
the lien here claimed is not asserted under that section.    It
is, however, the only section of all the lien statutes to which a
plausible argument for a lien on anything in favor of these
respondents could be addressed.

The respondents assert that the screening apparatus was
placed at Powell's direction where it was most serviceable, rel-
ative to the balance of the work.    No citation to the record in
support of this statement is made, and a careful reading of
the record fails to disclose any such testimony.    In any event,
that circumstance would be immaterial.    The apparatus was
doubtless located with a view to the convenience of all of the
parties concerned.

The respondents further contend that, the trial court hav-
ing found that Betts was a subcontractor, and the question
involved being not one of law but of fact, this court is not at
liberty to disturb that finding.    This contention is erroneous
for two reasons.    In the first place, on undisputed evidence as
to the facts, whether the lien arose or not was a question of
law.    In the second place, this is a trial *de novo,* in which the
findings of the trial court, though entitled to weight, have no
binding force upon us.    *Johns v. Arizona Fire Ins. Co.,* 76
Wash. 349, 136 Pac. 120, and cases there cited.    *Borde v.*

*Kingsley,* 76 Wash. 613, 136 Pac. 1172; *Lewis v. Dean,* 76 Wash. 596, 137 Pac. 341; *Dougherty v. Soll,* 70 Wash. 407, 126 Pac. 924. These decisions clearly recognize the correct rule that findings of the trial court in a case triable *de novo* will be sustained only when supported by a fair preponderance of the evidence. It is our duty in such a case to weigh the evidence. That is what a trial *de novo* means.

Respondents cite decisions from other jurisdictions to the effect that, in order to have a lien for labor, it is not necessary that the labor be performed on the premises where the improvements are actually made. This is, of course, true if the labor was performed directly for the owner, or for the principal contractor, or for his subcontractor, who has undertaken to perform some specific part of the work of actual construction. The cases cited go no further. In *Evans Marble Co. v. International Trust Co.,* 101 Md. 210, 60 Atl. 667, 109 Am. St. 568, a subcontractor, by contract with the principal contractor, agreed to carve, erect, place, and finish all the exterior marble work on a certain structure. The statute there under discussion gave a lien for labor only. The subcontractor who directed all of the work of preparing and placing the marble in the structure was accorded a lien for his labor. The right to a lien in favor of laborers employed by him was not involved nor discussed. In *Scannell v. Hub Brewing Co.,* 178 Mass. 288, 59 N. E. 628, it was merely held that a lien could be maintained for labor performed under an agreement with the property owner to furnish and erect brewery boilers set up in brick work, with all pipe connections, and also certain tank work. Part of the work was done at the petitioner's works in preparing the material. The lien was claimed by, and allowed to, the original contractors for preparing and setting up the boilers. As in the last case cited, no right of lien as in favor of the claimant's employees was either involved or discussed. In *Daley v. Legate,* 169 Mass. 257, 47 N. E. 1013, it was held that workmen were entitled to a lien for labor on materials which they knew were

intended for use on a building which their employer had contracted to build, and which were, in fact, so used, though the work was done in the contractor's own yard. In *Webster v. Real Estate Imp. Co.*, 140 Mass. 526, 6 N. E. 71, it was held that a mechanics' lien for labor in hauling sand to be used in work upon a building could not be maintained. The statute apparently gave no lien to a materialman as such, hence, there could be no lien for hauling the sand, since the work was not connected with the actual building of the structure. This case, like the last one cited, so far as it has any bearing upon the question here presented, is contrary to the respondents' contention. In *Wilson v. Sleeper*, 131 Mass. 177, the laborer was employed by, and the labor was performed directly for, the principal contractor, and consisted in preparing finish for certain houses. Had the claimants in the case here involved been employed by the original contractor Powell, the case cited would be apposite. On the facts here, it is not. These decisions clearly sustain the postition that, in order to maintain a lien for labor against the structure itself, the labor must either be performed directly for the owner, or for the original contractor, or for a subcontractor who has contracted to build some part of the actual structure.

Finally, we say that, since the statute clearly contemplates a distinction between subcontractors and materialmen, the line of distinction contemplated by the statute between these two must be definitely drawn somewhere, otherwise the owner of property would never know how to protect himself. He would never know when or where even to seek the information necessary to protect himself. He can reasonably be expected to know of a subcontract, and the work performed in carrying it out, because the work of the subcontractor, or some part of it, is performed upon the property, and in the actual construction of the improvement. It would be wholly unreasonable to expect him to go afield and investigate as to all labor performed by employees of materialmen furnishing the various materials used in the work, none of such labor being

connected with the actual work of construction, nor performed upon his premises. The statute must be liberally construed, but a liberal construction does not mean an unfair construction, even in the interest of a favored class.

The decree foreclosing the alleged liens is reversed, and the cause is remanded for dismissal as to the appellant canal company.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.