[No. 12486. Department Two. April 29, 1915.]

## LAKE GRAVEL COMPANY, *Respondent*, v. WILLIAMS COMPANY, *Appellant*.[1]

APPEAL—REVIEW—FINDINGS. Under Rem. & Bal. Code, § 1736, requiring a trial *de novo*, on appeal in actions legal or equitable tried to the court, the findings of the trial court are treated with respect, but will be set aside if the supreme court is convinced that they are against the preponderance of the evidence.

Appeal from a judgment of the superior court for King county, Humphries, J., entered June 22, 1914, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Modified.

*Burkey, O'Brien & Burkey*, for appellant.

*Bamford A. Robb*, for respondent.

ELLIS, J.—This is an action to recover a balance claimed to be due for sand and gravel furnished on contract by the plaintiff to the defendant for use in the construction of permanent highway "3 B" in King county, between June 16 and December 1, 1913.

The contract is in writing and provides that plaintiff shall deliver to defendant sand and gravel, according to specifications and acceptable to the county engineer, at sixty-two and one-half cents a cubic yard, f. o. b. Auburn, freight charges to be paid by defendant and deducted from the amount due the plaintiff; cost of freight and hauling charges on any material rejected by the engineer to be deducted from amount due plaintiff. The specifications referred to are those contained in the written contract between the defendant and King county for the construction of the road, and provide that the sand should be clean, coarse and sharp, and that both

[1]Reported in 148 Pac. 8.

sand and gravel should be thoroughly washed until free from lime, clay or earthy particles. Though the written contract is for four thousand yards of material, it is admitted that it was orally agreed between the parties that the written contract should apply to all material furnished.

Exclusive of three car loads rejected by the engineer in the cars and not included in the plaintiff's bill, the plaintiff claimed to have delivered to the defendant 9,942.5 yards of sand and gravel of a value of $6,214.03. Plaintiff admitted that 'it received from the defendant $3,200 cash on account, and that defendant was entitled to credit for $2,190.21 for freight paid by the defendant, leaving a balance of $823.82, for which plaintiff asked judgment, with interest thereon from December 1, 1913.

The defendant denied that it had received more than 9,039.75 yards of usable material; alleged that 744.5 yards delivered did not comply with the specifications, but contained debris, dirt and clay and could not be used and was left in the bottoms of the cars; that in addition thereto, 160 yards of material was condemned by the engineer, and that in making part of the sand and gravel that was used acceptable to the engineer, the defendant was required to use in connection therewith cement of the value of $97.40; and that defendant was put to the expense of hauling and handling condemned gravel which with the cost of this cement, amounted to $223.90. The defendant also set up an affirmative defense and counterclaim to the effect that, by reason of the inferior grade and quality of the material furnished, the defendant was required by the engineer to pick, clean and wash it before use, and was delayed in the construction of the highway by reason of the inferior material shipped, to the defendant's damage in the sum of $500.

The case was tried to the court without a jury. The court found that the plaintiff furnished the amount of material claimed in its complaint, which at the contract price

amounted to the sum of $6,214.03; that the material was of good grade, free from debris, dirt or mud and was shipped in clean cars; that defendant should receive credit for the sum of $223.90 for rejected sand and gravel and for making part of the material furnished acceptable to the county engineer; that there remained due from the defendant to the plaintiff $599.92, with interest at six per cent from December 1, 1913, for which amount and costs judgment was entered. The defendant appeals.

The several assignments of error are all directed to the single claim that the findings of the court are not supported by a preponderance of evidence. The respondent advances the much worn argument that this court will not disturb the findings of the trial court unless they lack any support in the evidence. It is asserted that this court has so often decided that counsel deems it unnecessary to cite any authority on the question. It is true that, in a few cases, expressions capable of that construction have inadvertently crept into our opinions, but the contrary rule has been expressed so often and so positively, and is so clearly laid down by the statute, Rem. & Bal. Code, § 1736 (P. C. 81 § 1225), that we are at a loss to understand the continued reassertion of this long discarded theory. As we said in *Baker v. Yakima Valley Canal Co.*, 77 Wash. 70, 137 Pac. 342, after citing a number of decisions:

"These decisions clearly recognize the correct rule that findings of the trial court in a case triable *de novo* will be sustained only when supported by a fair preponderance of the evidence. It is our duty in such a case to weigh the evidence. That is what a trial *de novo* means."

And again in *Zizich v. Holman Security Inv. Co.*, 77 Wash. 392, 137 Pac. 1028, 139 Pac. 57, we said:

"The statute, Rem. & Bal. Code, § 1736 (P. C. 81 § 1225), puts the burden upon this court of trying the case *de novo* in actions legal or equitable tried to the court. In the discharge of this duty, we treat the findings of the trial judge

with great respect; but if, upon an examination of the evidence, we become convinced that a preponderance of the testimony is against the findings of the trial judge, it becomes our duty to make our own view effective."

See, also, *Lewis v. Dean*, 76 Wash. 596, 137 Pac. 341; *Borde v. Kingsley*, 76 Wash. 613, 136 Pac. 1172; *Dougherty v. Soll*, 70 Wash. 407, 126 Pac. 924; *Johns v. Arizona Fire Ins. Co.*, 76 Wash. 349, 136 Pac. 120, 49 L. R. A. (N. S.) 101, and numerous decisions therein cited, where the same rule is negatively stated.

In accordance with our clear duty under the statute as construed by these decisions, we have examined the evidence in this case with much care. We have read not only the abstract and supplemental abstract, but also the statement of facts, which is not voluminous. We find that the respondent, in open court during the trial, admitted that the appellant is entitled to an allowance for 160 yards of condemned gravel, which at the contract price would amount to $100; fifteen yards on account of a fir stump shipped in one car, which at the contract price would amount to $9.37; and for $97.40 for cement used by direction of the engineer in making other material shipped acceptable. The appellant is thus entitled to an undisputed credit of $206.77.

There was also undisputed evidence that the appellant, by reason of the shipment of unusable material, was put to the following items of necessary expense:

| | |
|---|---:|
| Demurrage on one car of material | $2.00 |
| Unloading that car | 5.30 |
| Unloading another car | 5.00 |
| Hauling twenty yards of condemned gravel to the roadway | 11.00 |
| Removing eighteen yards | 5.65 |
| Removing 110 yards of condemned gravel | 24.50 |
| | $53.45 |

These items being clearly established, not only by a preponderance of the evidence, but by undisputed evidence, the appellant should receive credit for that amount.

As to the material which appellant claims was left in the bottoms of the cars because of its being mixed with dirt, debris and mud, there was a direct conflict in the evidence. That of the appellant may be condensed as follows: Of the 299 carloads, 210 were shipped in gondola cars, 80 in flat bottomed cars, and 9 in cars of which the evidence gives no specific description. In the bottom of each of the gondola cars were four pockets, each of which would hold about three-fourths of a yard of material. The testimony of the appellant's president and three other witnesses was to the effect that the pockets in each of these gondola cars were filled with mud, slime and debris, indicating that, after the cars were filled, water had been turned upon them, thus washing the earthy material and debris to the bottom of the cars. The testimony is clear that in practically all of these gondola cars this unusable material was not unloaded but was left in the pockets. The appellant's evidence was also clear to the effect that in the bottom of each of the flat bottomed cars was about one yard of unusable material, which was left when the car was unloaded. According to this testimony, it would appear that there were at least three yards of material thus left in each of the 210 gondola cars, amounting in all to 630 cubic yards, and one yard in each of the 80 flat bottomed cars, making a total of this unusable material of 710 cubic yards. This, at the contract price, would amount to $443.75. Two of the witnesses for the respondent testified that the gondola cars were returned with the pockets filled with material, but denied that the material was inferior in any particular to the balance of the car load. They testified, however, that this returned material was taken from the cars and the cars washed out before reloading, a course hardly necessary if this returned material was good.

It is also urged on the respondent's part that none of this material found in the bottoms of the cars was rejected by the county engineer. The contract, however, did not make the engineer the arbiter between these parties. The undisputed evidence is that the county inspector on the work did examine many of these cars after they were unloaded, and directed the appellant's employees to reject all such material as found in the bottoms of the cars which he examined. We think that the evidence clearly preponderates in favor of the appellant's claim that the material left in the bottoms of these cars was unfit for use upon the work, did not come up to the specifications that the material should be thoroughly washed until free from lime, clay or earthy particles, and that it was rejected at the instance of the inspector for the county for that reason.

When the respondent presented its bill for the balance of $823.82, the appellant presented to the respondent a counter bill for credits, including all of the foregoing items, and some others not clearly established by the evidence. In addition to these, the appellant's evidence also tended to establish a claim of about $60 paid for labor in picking shale from the material which was actually used, and $45 for loss of time by the bricklayers, caused by the fact that certain of the sand shipped for use as a cushion for the brick was unfit and the bricklayers could not proceed until other sand had been procured. The evidence touching these items, however, is not entirely satisfactory, and in view of the fact that neither of them was included in the bill for credits presented by the appellant to the respondent, we are of the opinion that they should not be allowed. It would seem that, had the appellant believed at the start that it was justly entitled to these credits, they would have been included in its bill. The fact that they were not so included raises a strong presumption that they are an afterthought.

A further discussion of the evidence would be of no profit. It must suffice to say that we have carefully considered all of

it, and are convinced that the evidence clearly preponderates in favor of the conclusion that the appellant is entitled to the following credits:

(1) For the value of 160 yards of rejected gravel; 15 yards for the space occupied by a .stump in one of the cars; and $97.40 worth of cement, amounting in all to.....................$206.77

(2) For demurrage on one car and the handling of rejected gravel ....................·.............. 53.45

(3) For rejected material left in the bottoms of the cars, amounting in all to 710 yards........ 443.75

Total.............................$703.97

Deducting this amount from the $823.82 claimed by the respondent, leaves a balance due of $119.85, for which amount, with interest from the first day of December, 1913, and costs in the trial court, the respondent is entitled to judgment.

The cause is therefore remanded with direction to the trial court to modify the judgment in accordance with this opinion. The appellant may recover its costs on this appeal.

MORRIS, C. J., MAIN, FULLERTON, and CROW, JJ., concur.