[No. 30775. Department Two. April 18, 1949.]

IRENE E. FIX, *Respondent*, v. HAROLD M. FIX, *Appellant*.[1]

*Wright, Booth & Beresford,* for appellant.

*Wright & Wright,* for respondent.

SCHWELLENBACH, J.—This is an appeal from an interlocutory order of divorce granted to the plaintiff on the ground of cruelty. Finding of Fact No. 6 is as follows:

"That the defendant has been guilty of extreme cruelty to the plaintiff, rendering her life burdensome and making it impossible for her to continue to live longer with him as his wife. He has indicated that he expects her to work outside the home and has consistently made fun of the type of employment she obtained, which was of an artistic nature. That he bickered with the plaintiff constantly and used improper language about the home, all of which constituted cruelty."

Our problem is to determine whether or not such finding was justified by the evidence.

The parties were married at Vancouver, Washington, in December, 1942. They lived at Oswego, Oregon, where the husband worked for a railroad company. He entered the service in June, 1944, and she moved to Portland, and later to Seattle. She visited him while he was stationed in California, and they seemed happy together. Upon his being

[1]Reported in 204 P. (2d) 1066.

discharged from the service on March 16, 1946, he noticed quite a change in her. He testified that she was cold and indifferent to him. She told him that she had been going out with another man. She was not sure whether she wanted to resume marital relations with her husband or not.

However, they did patch up their differences and buy a home. The husband obtained employment with the Veterans Administration in Seattle, and the wife went to work for the Bon Marche, assisting the window trimmer. She became very interested in this work and wanted to attend the Cornish School in order to obtain additional training. Her husband acquiesced. Quite often she worked late, especially during the Christmas season. At one time she did not come home for four nights, but this was explained by a lady with whom she worked, who testified that they worked late and went to this woman's home. Finally, the wife left home.

Two elements of cruelty were testified to by the wife, to which the court gave little credence. One was that the husband made unreasonable sexual demands on her, and the other was that he became abusive because she would not attend church. Both are members of the Catholic faith.

As to the two charges of cruelty which the court sustained, the bickering and making fun of her work which was of an artistic nature, and the use of improper language, the wife testified as to these accusations, and the husband denied them. No witness corroborated her testimony. On the other hand, her mother and her two sisters testified that the husband was kind and considerate; that he did not ridicule her work; and that he did not use improper language.

The following testimony is quite revealing of the situation. At the close of her direct testimony, her attorney asked her:

"Q. Mrs. Fix, do you think it is possible for you and Mr. Fix to get back together and become reconciled? A. I don't want to have to go back to him. I would rather go some place else. I would rather go to jail. Q. Do you think it is possible that you could get back together and have

children of this marriage and make a success of it? A. No, I have told him many times I don't want him to be the father of my children if I ever have any. Q. Why not? A. He has got too much of a temper. He gets mad and —."

Under cross-examination, she testified:

"Q. Now, Mrs. Fix, even if Mr. Fix were to cease and desist of all these things which you feel are objectionable, such as insisting you go to church and that sort of thing, do you think you could go back together and live with him as husband and wife? A. I don't think I care to. No, I don't want, ever want to. Q. I take it that over a period of time in your marriage, it just developed that emotionally you couldn't respond to Mr. Fix? A. That is right."

In other words, Mrs. Fix just doesn't care for her husband any more. But, unfortunately for her, plaintiff's indifference or dissatisfaction is not a statutory ground for divorce. Rem. Rev. Stat., § 982 [P.P.C. § 23-1].

The dilemma in which the trial judge found himself can be understood when he said to the respondent's mother, as she was completing her testimony:

"How can I force these two people to live together as man and wife if they don't want or if one of them refuses?"

We sympathize with the predicament in which the trial judge found himself. He was convinced that the parties could never become reconciled. He was satisfied that the situation was hopeless. However, the courts are limited in granting divorces to the nine grounds for divorce listed in the statute. If the legislature, in its wisdom, sees fit to provide other grounds, that is its privilege. We cannot make laws. We can only apply the laws which the legislature makes to the facts in a particular case.

In *Johnsen v. Johnsen*, 78 Wash. 423, 139 Pac. 189, 139 Pac. 1200, in reversing a decree of divorce granted to the wife upon the ground of cruelty, we said:

"In actions in equity and at law, where the case is tried to the court, the statute puts the burden upon us of trying the case *de novo*. In considering the probative force of the evidence, we will treat the findings of the court with great respect; but if, upon the entire record, we conclude that the

preponderance of the evidence is against the finding, it becomes our duty to reflect our conclusion in the judgment. *Baker v. Yakima Valley Canal Co.*, 77 Wash. 70, 137 Pac. 342; *Zizich v. Holman Security Inv. Co.*, 77 Wash. 392, 137 Pac. 1028, 139 Pac. 57; *Borde v. Kingsley*, 76 Wash. 613, 136 Pac. 1172."

In the instant case we are convinced, from the record, that the findings of the trial court are clearly not supported by the weight of the evidence. The interlocutory order of divorce is reversed.

JEFFERS, C. J., ROBINSON, SIMPSON, and GRADY, JJ., concur.