[No. 8244.  Department Two.  May 11, 1910.]

YOUNG MEN'S CHRISTIAN ASSOCIATION OF NORTH YAKIMA,
*Appellant*, v. JAMES GIBSON *et al., Respondents*.[1]

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—BUILDING CON-
TRACTS—RELEASE OF PARTY TO CONTRACT. Where a firm of building
contractors dissolved partnership before completion of a building,
the owner did not release the retiring partner, or acquiesce in his
release by the copartner, by merely writing a letter and making a
payment individually to the copartner without mention of the firm,
in the absence of any intent to do so; and therefore the surety on
the building contract would not be discharged from liability by
reason of the release of one of the parties.

SAME — DISCHARGE OF SURETY — SUPERINTENDENT'S ESTIMATES —
PARTIAL PAYMENTS. Where the superintendent of construction, as
representative of the owner, is by the contract made the agent of
all parties for the purpose of making estimates and certificates for
partial payments as the work progressed, payment by the owner in
good faith of estimates that were too high will not discharge the
surety on the building contract, although the superintendent did not
properly discharge his duties and the certificates might not have
been sufficient to bind the owner; since the estimates were not final
or intended to be absolutely correct.

SAME—DISCHARGE OF SURETY—PAYMENTS—CONTRACT—FILING OF
RECEIPTS—"SUBCONTRACTOR." A surety on a building contract is
not discharged by the owner's making partial payments without re-
quiring the contractors to file receipts showing that all claims for
labor and material for the previous month were paid, where the
contract only required the contractors to file receipts showing that
all *subcontractors* had been paid in full to the amount of the esti-
mates; as "subcontractor" is used in its technical sense and does
not include laborers or materialmen.

SAME—DISCHARGE OF SURETY—CONTRACT—CONDITIONS—WAIVER. A
provision in a building contract that the superintendent shall audit
and certify to the cost of completing the building after abandonment
by the contractors does not apply, so as to work a discharge of the
surety if not complied with, where the surety waived its right to
complete the building on condition that the contract for completing
it be let to the lowest of three bidders who should give a bond for
the faithful performance of the special contract.

[1]Reported in 108 Pac. 766.

INDEMNITY—BONDS—DEFENSES—IMMATERIAL QUESTIONS. In an action on an indemnity bond guaranteeing a building contract, the failure to audit a claim for demurrage, as required by the contract, is immaterial where other valid claims exceeded the penalty of the bond.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—RESPONSIBILITY OF PRINCIPAL. A surety company that guaranteed the faithful performance of a contract by a copartnership that had undertaken contracts to the amount of $200,000 on a capital of $400, cannot escape liability because the owner let the contract to such a partnership.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered April 5, 1909, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

*Englehart & Rigg*, for appellant.

*Peters & Powell* and *Wende & Taylor*, for respondent Aetna Indemnity Company.

RUDKIN, C. J.—On the 13th day of February, 1907, the Young Men's Christian Association of North Yakima, a corporation, organized and existing under the laws of this state, entered into a contract with Gibson & Smith, a copartnership, for the construction of a stone building on certain lots owned by the association in the city of North Yakima. The contract called for the completion of the building on or before the 15th day of October, 1907, for a consideration of $36,794. A further consideration of $1,200 was subsequently agreed upon to cover certain changes in the plans and specifications, making the total contract price $37,994. The only provisions of the contract and specifications deemed material on this appeal are the following:

"The construction of the entire work will be supervised by a superintendent, who shall be the authorized representative of the building committee.

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the

performance of any of the agreements herein contained, such refusal, neglect or failure, being certified by the superintendent, the owner shall be at liberty, after two days' written notice to the contractor to provide any such labor or materials and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the superintendent shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and to take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the superintendent, whose certificate thereof shall be conclusive upon the parties.

"Between the 1st and 10th of each month during the progress of the work, the building committee will pay to the contractor a sum equal to 80 per cent of the value of the work done and materials used in the construction of the building during the previous month as assessed by the superintendent, and the balance thirty days after the completion of the work herein included, or a certain number of payments as may be agreed upon, each of said payments to be made on the certificate of the superintendent, signed by him, setting forth the amounts estimated for each part of the work, and that the payment is properly due. Said certificate, however, is in no way to lessen the final responsibility of the contractor, nor to exempt him from liability to make good any work or materials afterward found to be defective.

"After the first certificate is given by the superintendent, no further certificate will be issued until the contractor files receipts with the superintendent and building committee showing that each and every subcontractor has been paid in full to the amount of the estimate as per the certificate of the previous month. Said receipts shall remain in possession of the building committee or its appointed representative as the property of the building committee.

"The work herein included shall be commenced as soon as practicable after the contract is signed and the bids accepted, and shall be finished, complete in every detail and ready for acceptance on or before October 15, 1907; or in case of failure on the part of the contractor so to do, he shall forfeit the amount of $20.00 per day for each and every day following said date until said completion, said amount to be retained by the association as agreed and liquidated damages, and in full compensation for all damage by the association sustained on account of the failure of the contractor to perform his contract within the time in said contract specified."

On the 16th day of February, 1907, the defendant the Aetna Indemnity Company, a corporation, executed and delivered to the association a bond, in the penal sum of $10,000, conditioned for the faithful performance of the foregoing contract, subject to the following conditions:

"If the said principals shall voluntarily abandon said contract, or be lawfully compelled by the obligee to cease operations thereunder by reason of their nonperformance of any of its terms or conditions, then the surety shall have the right, in its option, to assume the said contract and to sublet or complete the same, and if said contract shall be assumed by the surety, then as such contract is duly performed, any reserve, deferred payments and all other moneys provided by said contract to be paid to the principals shall be paid to the surety at the same time and under the same conditions as by the terms hereof, such moneys would have been paid to the principals had the contract been duly performed by them. And if said obligee shall complete or relet the said contract, then any forfeitures provided in said contract against the principals shall not be operative as against the surety, but all reserves, deferred payments and all other moneys provided in said contract which would have been paid to the prin-

cipals had they completed the contract in accordance with the terms, shall be credited upon any claim the said obligee may make ·upon said surety.

"The said obligee shall retain the last payment and reserve due said principals until the complete performance by said principals of all the terms, covenants and conditions of the contract on said principals' part to be performed and until the expiration of the time within which liens or notices of liens may be filed, by reason of anything done in or towards the performance of said contract, and until the cancellation and discharge of such liens, if any, and said surety shall be notified in writing before said last payment shall be made or said reserve paid.

"If any suits at law or proceedings in equity are brought against said surety to recover any claim hereunder, the same must be instituted within six months after the completion of the work specified in said contract."

Construction work commenced under the contract soon after its execution, and continued until on or about the 15th day of November, 1907, at which time the contractors abandoned the contract and refused to complete the building. Between the commencement of work and the abandonment of the contract, the association paid to the contractors the sum of $30,635, on monthly estimates certified or OK'd by the superintendent in charge of the work. In addition to the amount paid to the contractors, the association was compelled to, and did, pay the sum of $7,393.72 to satisfy and release certain judgments, liens, and lienable claims against the property, and the further sum of $11,506.44 to complete the building, making the total cost of the building to the association the sum of $49,535.16, or $11,531.36 in excess of the contract price. The present action was instituted against the contractors and the indemnity company, to recover the last mentioned sum, together with the sum of $4,820 for 241 days' delay in the final completion of the building. Judgment by default was taken against the contractors, and from a judgment in favor of the indemnity company, after trial, the association has appealed.

The amount paid by the appellant to secure a completion of the building, according to the terms and conditions of the building contract, is not challenged, and we will, therefore, direct our attention to the different defenses interposed and urged by the respondent.

The answer alleged affirmatively: (1) That the action was not commenced within six months after the completion of the work specified in the contract; and (2) that the defendant Smith withdrew from the contract and released all his rights and interest therein to the defendant Gibson, and that the appellant and the defendant Gibson released the defendant Smith from all liability under the contract, without the knowledge or consent of the respondent. These defenses are not sustained by the testimony. The action was commenced well within six months after the final completion of the building, and there is no competent proof tending to show that the appellant released, or assented to, or acquiesced in, the release of any party to the contract. There is testimony tending to show that the copartnership existing between Gibson and Smith was dissolved by mutual consent, about two weeks before the abandonment of the contract, and that the appellant had notice of such dissolution from newspaper reports and otherwise. It further appears that one letter was addressed to the defendant Gibson, individually, by the chairman of the building committee, and one check issued to him individually after the dissolution, without naming or referring to the copartnership. But the appellant could not prevent a dissolution of the partnership or a release of one member of the firm by the other, nor could it prevent either of the parties to the contract from carrying out the contract and completing the building. The writing of this letter and the giving of the check did not constitute a release of one of the partners, or an acquiescence in his release by the other partner, in the face of testimony on the part of the appellant that it did not, and did not intend to, release any party to the contract. There was no testimony to the contrary.

It is next contended that the appellant paid moneys to the contractors without requiring them to produce certificates from the superintendent, as required by the building contract and specifications.  Before each payment was made a certificate in substantially the following form was presented to the building committee:

North Yakima, Wash., —————, 1907.

Estimates of material and labor used on the Y. M. C. A. Building during the month of —————, 1907.

```
          Pay roll ......................................$3,029.00
          Brick .........................................  900.00
          Lime ..........................................  125.00
          Sand ..........................................  150.00
          Lumber ........................................  250.00
          Blacksmithing .................................   27.00
          Back on labor from last estimate.............. 1,626.00
                                                         ─────────
             Total.....................................$6,107.00
          $6,107.00 less 20 per cent...............$6,107.00
                     20  per cent..................... 1,221.40
          ─────────                                      ─────────
          $1,221.40  amount due..................$4,885.60
O. K.—H. W. Hughes, Supt.
O. K.—B. F. Barge, Chairman.
              Gibson & Smith.
```

The sufficiency of these certificates is challenged, and it must be confessed that the superintendent was extremely lax in the discharge of his duties.  One at least of the estimates was prepared by the contractors, and the others were taken largely if not wholly from the contractors' books.  It further appears that the estimates in some cases, if not in all, included the value of material on the ground and not used in the building, and that the estimates were too high.  If this were an action by the contractors to recover the amount of one or more of these estimates, it may well be that the property owner would not be bound by estimates thus made or obtained.  *Ilse v. Aetna Indemnity Co.*, 55 Wash. 487, 104 Pac. 787.

But these estimates were merely the bases of partial payments under the contract and were not intended to be either final or absolutely correct.  Had the appellant refused to

make payments on such estimates a release of the surety would doubtless be urged on that ground. While the superintendent was nominally and in fact the agent of the building committee, under the provisions of the building contract, he was the agent of all parties concerned for the purpose of furnishing these estimates, and the appellant having acted upon them in good faith and without fraud, we have no hesitation in saying that its conduct in that behalf did not release the surety.

It is next contended that payments were made by the appellant without requiring the contractors to produce receipts, showing that all claims for labor and material for the previous month had been paid. If such were the agreement of the parties, the question thus presented is not free from difficulty, but we do not so read their contract. The provision above quoted from the specifications required the contractors to file receipts with the superintendent and building committee, showing that each and every *subcontractor* had been paid in full to the amount of the estimates, as per the certificate of the previous month. This did not require the superintendent or committee to exact receipts for all claims for labor and material. The term *subcontractor* has a well defined meaning in building contracts, and the word was doubtless used here in its technical sense. A subcontractor is one who takes from the principal contractor a specific part of the work, and the term does not include laborers or materialmen. *Farmers' Loan & Trust Co. v. Canada & St. Louis R. Co.*, 127 Ind. 250, 26 N. E. 784, 11 L. R. A. 740. The testimony is indc....... as to what, if any, part of the work was done by subcontract, but there is no testimony in the record tending to show that any claims were paid without the production of the requisite receipts from subcontractors.

It is next contended that the superintendent did not audit or certify to the cost of completing the building after the abandonment by the contractors, prior to the commencement of the present action. There would be force in this contention

if the building was completed by the owner after the abandonment under the terms of the original building contract, but the respondent reserved the right to complete the building itself under the terms of its bond, in case of an abandonment by the original contractors, and waived that right after such abandonment, on condition that the contract for completing the building should be let to the lowest of three bidders who should give a bond for the faithful performance of the contract. The building was completed under this special contract, and the contract as let fixed the cost of the work. There was no claim to audit under such circumstances, and the provision for auditing in the original contract has no application.

It is further contended that the claim for demurrage should have been audited and certified by the superintendent, and this is perhaps true, but inasmuch as other valid claims exceed the penalty of the bond, a discussion of that question would serve no purpose. Other questions are discussed in the briefs, but they require no special consideration. The respondent is disposed to criticize the appellant for letting the contract to a copartnership that had undertaken contracts to the amount of $200,000 on a capital of $400, but it seems to us that that question concerned the surety more than the owner. The surety is the party who guaranteed the faithful performance of the contract, although it seems to have lost sight of that fact, and is now seeking to satisfy the obligation of its bond by showing slight irregularities on the part of the owner, rather than performance of the contract by the principals. On the entire record, we are convinced that no substantial or meritorious defense to the action exists, and the judgment is accordingly reversed, with directions to enter judgment in favor of the appellant and against the respondent for the full penalty of the bond, with interest from date of commencement of the action.

CROW, DUNBAR, PARKER, and MOUNT, JJ., concur.