PEARL LEE BARTON, Respondent, v. TITLE
   GUARANTY AND SURETY COMPANY, a Cor-
   poration and ALBERT F. MORRIS and SID-
   NEY KEMP, doing Business as MORRIS AND
   KEMP, Appellants.

**Kansas City Court of Appeals, March 6, 1916.**

1. **PRINCIPAL AND SURETY: CONTRACTOR'S BONDS.** Where
   a building contract provides for the payment of money, by the
   owner to the contractor, only upon the certificates of the
   architect, and the contractor is so paid, in excess of eighty-
   five per cent of the contract price, the architect being un-
   aware of any unpaid bills, the contractor's surety cannot
   maintain that it was released from the obligation on the bond,
   by the acts of the architect in issuing, and of plaintiff in
   paying, the contractor's certificates in excess of said eighty-
   five per cent because a certificate was sufficient to enable
   the contractor to force the owner to pay.

2. ———: ———: When the architect is the agreed person
   in a contractor's contract and bond, to determine when pay-
   ments shall be made under the contract, his certificates,
   issued in good faith, are binding on all parties, and the con-
   tractor's surety will not be discharged by the payment of an
   amount in excess of that stipulated in the contract.

Appeal from Jackson Circuit Court.—*Hon. Thos. J.
          Seehorn,* Judge.

AFFIRMED.

   *Wendell H. Cloud* and *Sam R. Halstead* for ap-
pellants.

   *McCune, Harding, Brown & Murphy* and *R. B.
Caldwell* for respondent

   JOHNSON, J.—This is a suit on a building con-
tractor's bond on which the appealing defendant, The
Title Guaranty & Surety Company, was a surety for

hire. The referee, to whom the circuit court referred the case, filed his report consisting of findings of fact and conclusions of law in which he found that plaintiff was entitled to recover against the surety her demand for disbursements she had made to protect her property from mechanic's liens for materials, etc., used by the contractors in the construction of the building, but was not entitled to recover attorneys' fees she had incurred in that behalf. The court overruled defendant's exceptions and rendered judgment for plaintiff accordingly. Defendant was allowed an appeal to the Supreme Court but on motion of respondent the cause was transferred to this court.

There is a serious question urged by plaintiff of the sufficiency of the exceptions filed to the report of the referee to raise any issue, either of fact or law, but since we are satisfied that the case was properly decided on the merits, we shall pass the decision of that question which otherwise could not be ignored.

In November, 1910, plaintiff entered into a contract in writing with Morris & Kemp, contractors, for the construction of a building in Kansas City according to designated plans and specifications at a cost of $17,862, subject to additions and deductions for extra work. Progress payments on the contract price were to be made from time to time on certificates of the architect, the basis of such payments to be eighty-five per cent of the estimated value of the work the certificates stated had been done. The final payment was to be made in fifteen days after the completion of the work. The bond in suit was given by the contractors to secure the performance of this contract which, of course, required the contractors to pay for the labor and materials that were employed and used in the construction of the building. The referee found and the finding is not disputed that the total contract price, including extras was $19,147; that from time to time, plaintiff paid the contractors on certificates of

the architect the total sum of $16,700 which was $425.05 in excess of eighty-five per cent of the entire contract price; that the contractors failed to pay for certain materials used in the building amounting to $8857.47; that neither the architect nor plaintiff had knowledge of such breach of the contract until after the certificates were issued by the architect and paid by plaintiff and that when such knowledge came to them plaintiff withheld the final payment of $2447 and used that sum to discharge claims for materials. The architect testified that he inspected the work during its progress, issued the certificates on the basis of what he considered to be eighty-five per cent of the value of work done at the time and that when he questioned them about the payment of materials the contractors informed and satisfied him that the materials were being paid for.

The contract provided "such sum shall be paid by the owner to the contractors, in current funds, and only upon certificates of the architect, as follows: From time to time, as the work progresses, on the certificate of the architect, eighty-five per cent (85%) of the value of the work done.

"The final payment shall be made within fifteen days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued.

"If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractors, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify her against such lien or claim. Should there prove to be any such claim after all payments are made, the contractors shall refund to the owner all moneys that the latter may be compelled

to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default.''

The principal contention of defendant is that it was released from the obligation of the bond by the acts of the architect in issuing, and of plaintiff in paying, to the contractors certificates in excess of eighty-five per cent of the actual value of the work done when such respective certificates were issued.

The Supreme Court in Lackland v. Surety Co., 256 Mo. 133, and this court in Rule v. Anderson, 160 Mo. App. 347 and Boppart v. Surety Co., 140 Mo. App. 683, held that the doctrine that a surety is a favorite of the law and entitled to the benefit of *strictissimi juris* does not apply where the bond is executed for a consideration by a corporation engaged in such business for profit. Counsel for defendant point, in their brief, to section 1209, Revised Statutes 1909, which provides ''such surety company may be released from its liability, on the same terms and conditions as are by law prescribed for the release of individuals—it being the true intent and meaning of sections 1209 to 1211 to enable corporations created for that purpose to become surety on any bond, recognizance or other writing in the nature of a bond in the same manner that natural persons may, subject to all the rights and liabilities of such persons,'' and argue that since this statute declares the legislative will that the obligations of surety corporations are to be judged by the same law as those of individual sureties, the statute must have been overlooked by the Supreme Court in Lackland v. Surety Company, supra, and by this court in the two cited cases, and that we are bound to give heed to the legislative will and apply the *strictissimi juris* rule to all obligations of suretyship.

Though the decision in the Lackland case does not refer to the statute in express terms we have no doubt its provisions did not escape the attention of the court. The decision observes that ''the rule of *strictissimi*

*juris* is a stringent one . . . and ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for profit to insure the obligee against a failure of performance on the part of the principal obligor. [Hill v. American Surety Co., 200 U. S. 1. c. 202.] The reason of the rule is stated in the preceding paragraph, "By the general law of suretyship, evolved at a time when sureties were all of the class whose obligations were entered into from motives of friendship and without pecuniary considerations moving to them, any change in the contract releases the surety unless made with his consent."

It is clear the decision is grounded on the idea that the true test for the application to the particular case of the rule of strict law is whether or not the surety incurred the obligation as a matter of business for profit and where, as in the instant case, it appears that such was the nature of the relationship, the rule should not be allowed to govern whether the surety be a natural or artificial person. The reason of the rule would seem to allow no distinction between different classes of sureties who make a business of becoming sureties for profit.

Under the rule that any change in the contract without his consent releases the surety, it has been held in this State that a breach by the owner and contractor of a stipulation in a building contract relating to progress payments which provides for the reservation of a specified percentage of the contract price until the completion of the work will operate to release an accommodation surety who has not consented to such deviation on the ground that such reserved part of the contract price should be regarded as a fund, the contract provided as a guaranty or assurance that the contractor would comply with his contract. [Evans v. Graden, 125 Mo. 72; Taylor v. Jeter,

23 Mo. 244; Chapman v. Eneberg, 95 Mo. App. 127; Chapman v. Railway, 114 Mo. 543; Beers v. Wolf, 116 Mo. 179; Harris v. Taylor, 150 Mo. App. 291.]

Obviously that rule should not be arbitrarily but reasonably applied·in cases of commercial suretyship where the position of the surety is analogous to that of an insurer. In such instances the most that may be said of such reserve fund is that it stands as an additional security which, if impaired without the consent of the surety on the contractor's bond will release him to the extent of such impairment.

But if we should regard the rule of *strictissimi juris* as a canon for the interpretation of the contract of suretyship in this case and of the rights of the parties thereunder, still we would be compelled to hold that the excess of the progress payments did not operate to dicharge defendant. The payments were made by plaintiff only on the certificates of the architect and the contract required her to accept and honor those certificates. As was said in Chapman v. Eneberg, supra: ''The architect was the party agreed upon to determine when the payments were to be made; that is to say, he was to determine when the status of the work demanded a payment and his certificate issued in good faith, bound all parties. [Chapman v. Railway, 114 Mo. 542.] It must necessarily be the law that a surety for the performance of a contract cannot be discharged because of anything done in pursuance of its provisions.''

Such also is the view expressed in the Lackland case, supra: ''If a certificate is sufficient to enable the contractor to force the owner to pay, the contractor's surety could not maintain that they were insufficient to the extent that payments not under compulsion would have been unjustifiable.''

There is no question of the good faith of plaintiff and the architect in carrying out the contract. True the latter in his estimates overvalued the work done

but this was compatible with good faith and honest effort since the estimates, as the parties must have realized when they made the contract, could not be expected to be more than mere approximations and in agreeing that progress payments should be made upon certificates based on such estimates, the parties, including the surety, bound themselves to abide by reasonable over-valuations the architect might honestly make. As the learned referee well said in his report, "the architect was, to such an extent, the arbitrator on behalf of both parties in the matter of the determination of the question as to when the certificates for payment should be issued, that his decision in the matter binds the surety for the contractors, and the surety is not in a position to complain where the payments were made by the owner to the contractors upon certificates issued by the architect, in the absence of actual fraud or collusion between owner, contractors and architect."

The facts found by the referee fail to show any impairment of the reserve fund by excessive payments which could be allowed to discharge the surety. And there is no support for the contention that the architect and plaintiff were so negligent with respect to informing themselves on the subject of the payment by the contractors for the materials used in the work as to discharge the surety. The contract did not require the architect to demand receipted bills from the contractors, nor to take any unusual precautions to guard against the accumulation of unpaid bills which might ripen into mechanics' liens. Plaintiff, entitled to the protection of the bond in suit, was not required to make inquiries on her own motion, but was justified in relying, as the surety did, upon the sufficiency of the method of dealing prescribed by the contract.

If defendant, the surety, needed more efficient protection against possible loss, it should have provided for it in the contract and cannot be heard to complain

that plaintiff and the architect did no more for its protection than the contract required of them.

There is no error in the record and the judgment is for the right party. Affirmed.

All concur.