DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 15907.   Department Two.   January 7, 1921.]

EDWIN NEARY, *Appellant*, v. PUGET SOUND ENGINEERING COMPANY *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS   (158) — PUBLIC IMPROVEMENTS — CONTRACTOR'S BONDS — PERSONS SECURED—EMPLOYEES OF MATERIALMAN. One who contracts with a contractor to furnish all the sand and gravel to be used in the construction of a street is not a "subcontractor" but a materialman, though the contract provided that delivery of the sand and gravel should be "on the work as directed and required," and that rejected material should be replaced; hence employees of the one furnishing the sand and gravel who failed to give the statutory notice under Rem. Code, § 1159-1, cannot recover on the contractor's bond.

SAME (158, 159-2)—PERSONS SECURED—CONTRACTOR'S BOND — "SUPPLIES"—NOTICE—NECESSITY. Employees of one furnishing gravel to a contractor for a public improvement, who fail to give the statutory notice required under Rem. Code, § 1159-1, of persons furnishing material or "supplies" cannot recover for their services on the contractor's bond.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 2, 1920, dismissing, on the merits, an action upon a contractor's bond, after a trial to the court.   Affirmed.

*Edgar J. Wright,* for appellant Neary.

*Kelleran & Hannan,* for appellant Sparks.

*Roberts & Skeel* and *L. B. Schwellenbach,* for respondents.

[1]Reported in 194 Pac. 830.

Tolman, J.—In April, 1919, the respondent Puget Sound Engineering Company entered into a contract with the city of Kent to pave certain streets and, as required by the contract, gave a bond executed by the respondent United States Fidelity & Guaranty Company, conditioned:

"This bond is executed in pursuance of the laws of the state of Washington, as now in force, and is subject to all the provisions thereof, and is entered into with the city of Kent, Washington, its mayor and common council, and also for the use of persons who may perform or cause to be performed any work or labor, or furnish or cause to be furnished any skill, labor or material in the execution of a certain contract made the 25th day of April, A. D. 1919, between the said principal, the Puget Sound Engineering Company and the city of Kent, its mayor and common council for the improvement of Harrison street et al. as ordered by Ordinance No. 417-418-419-420 approved, local improvement district No. 181A, 181B, 182A, 182B and 183, by paving, in accordance with said contract, which contract is hereby attached and made a part hereof."

The contract attached to and made a part of the bond, provides:

"That, in consideration of the payments, covenants and agreements hereinafter mentioned to be made and performed by the city of Kent, the contractor hereby covenants and agrees as follows:

"(1) To do all work and furnish all the material necessary to construct, improve and complete certain streets and avenues in the city of Kent, known as the 1919 pavement, in accordance with and as described in the attached profiles, maps, plans and specifications which are hereby made a part hereof and shall have the same effect as though the same were fully inserted herein, and in full compliance with the terms, conditions and stipulations of this agreement.

"(2) The contractor shall provide and be at the expense of all materials, labor, carriage, tools, imple-

ments and conveniences and things of every descrip-
tion which may be requisite for the transfer of ma-
terials and for improving, construction and complet-
ing the work above described  .  .  .  provided, that
before the making of such final payments the con-
tractor shall show to the satisfaction of the city of Kent
that all just debts due all laborers, mechanics, material-
men and persons who have supplied such contractor or
subcontractor with material or goods of any kind for
this work, have been paid.  .  .  .

"Provided further, that if prior to any payment be-
ing made the city received notice from any person or
persons that any laborers, mechanics, materialmen or
other persons, who have furnished or supplied such
contractor or any subcontractor with any labor, serv-
ice, material, goods or provisions of any kind in con-
nection with the construction of said work have claims
against said contractor or any subcontractor, for any
such service or things, for which claim any such labor-
er, mechanic, materialman or other person would be en-
titled to a lien under the laws of this state were said
work not a public work, on a proper claim against the
bond in such cases required by law, the city shall have
the right to retain out of the payments then due or to
become due to said contractor, an amount in addition
to the twenty (20) per cent above provided to be re-
tained until the final completion of said work, suffi-
cient to cover all such claim or claims of which notice
shall have been so given until such claim or claims
shall have been fully satisfied and paid, and receipts
in full for the same shall have been furnished by the
said contractor to the city of Kent and the said
contractor hereby expressly agrees to pay all such
claims.  .  .  .

"(13) The contractor shall not let, assign, or trans-
fer this contract or any interest therein, or sublet the
work herein provided to be done, or any part thereof,
without the consent of the city of Kent. The contractor
shall file with the city a duplicate of all subcontracts
made by him as aforesaid.  .  .  .

"(16) The contractor agrees to execute and furnish
to the city a good and sufficient corporate surety bond,

to be payable to the city of Kent, and to be in the penal sum of the full amount of the contract, conditioned that he will perform the work upon the terms, within the time, and in accordance with the contract, profiles, maps, plans and specifications, and that he will indemnify the city against any direct or indirect damages that shall be suffered or claimed for injuries to persons or property during the construction and improvement of such streets and until the same is accepted; and further conditioned as required by law for the payment of all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such person or persons or subcontractor with provisions or supplies for the carrying on of such work, and all just debts, dues and demands incurred in the performance of such work. . . .

"(17) The city of Kent promises and agrees with the contractor to employ and does employ him to provide the materials and to do and to cause to be done the work upon said streets and avenues, and to complete and finish the same according to the plans and specifications and the terms and conditions herein contained and referred to for the price aforesaid, and hereby contracts to pay the same at the time and in the manner and upon the conditions above set forth."

Thereafter, the contractor entered into an agreement with one L. P. Harmon, in which contract Harmon agreed:

"To furnish all of the sand and gravel which may be required for the improvement work in the city of Kent for which the parties of the first part hold the contract. . . . The party of the second part herein agrees to furnish such sand and gravel at a uniform average rate of not less than fourteen hundred (1400) cubic yards per week, and the parties of the first part agree to receive not less than the above stated amount per week.

"The party of the second part further agrees that the quality of said sand and gravel shall be acceptable to the city engineer of the city of Kent, and to replace any material which may be condemned by said city

engineer of Kent free of any additional cost to the parties of the. first part.

"Parties of the first part hereby agree to pay for said sand and gravel as follows: Two dollars and seventeen and one-half cents ($2.17½) per yard delivered in the city of Kent on the work as directed and required by the parties of the first part. . . .

"The said party of the second part hereby agrees and covenants that in the event of his failure to carry out the terms of this contract which would cause the party of the first part unnecessary delay, that the party of the first part shall have the right to purchase such sand and gravel from any other source of supply which they may deem expedient, and that any additional cost by reason of said purchase shall be borne by the party of the second part. The parties of the first part shall have the right to judge as to the advisability of purchasing such materials from other sources. . . .

"It is mutually agreed between the party of the first part and the party of the second part that the value of said sand and gravel shall be considered as forty (40) cents per cubic yard at the bunkers, it being distinctly understood, however, that the parties of the first part are purchasing this material delivered on the job as above described and have nothing whatsoever to do with the method or mode of delivery."

Harmon employed the appellants, and others whose claims were assigned to appellant Neary, to haul this sand and gravel, using their own trucks, and agreed to pay them each $3.50 per hour while so engaged in the work. Their unpaid claims, aggregating $583.31, were properly and duly filed with the clerk of the city of Kent. Appellant Neary, as plaintiff, brought this action against the contractor and bonding company, alleging that Harmon was a subcontractor and that the work was performed for him and at his request, and demanded judgment accordingly. At the trial below, it was stipulated that the agreement between Harmon

and the Puget Sound Engineering Company was never filed with the clerk of the city of Kent. The validity and justness of these various claims as against Harmon was not disputed, but the right to enforce them against the contractor or the bond was contested. The trial court sustained this contention, and entered a judgment of dismissal, from which this appeal is prosecuted.

Two questions are raised here: (1) Was Harmon a subcontractor? and (2) if Harmon was a materialman and not a subcontractor, can appellant recover under the rule laid down by this court in *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767?

We think the first question must be answered in the negative, under the authority of *Baker v. Yakima Valley Canal Co.*, 77 Wash. 70, 137 Pac. 342. It is true that in the *Baker* case, the sand and gravel were screened and placed in his own bunkers by the person there held to be a materialman, and that the contractor took the material from the bunkers and made his own delivery to the place where the material was to be used. In this case, by his contract, Harmon bound himself to deliver the material "on the work as directed and required," and also agreed to replace any material which might be rejected by the city engineer; but we think this does not alter the principle involved. In many cases, under modern conditions, materialmen deliver their material upon the works where it is to be used. In our cities, lumber and mill work are commonly delivered by the manufacturer to the place where they are to be put into the building, but that should be no reason for holding that the workmen employed by the mill are, if not paid their wages by their employer, entitled to file a lien against the build-

ing and the ground on which it stands. The same il-
lustration applies to the provision that the material
shall be satisfactory to the city engineer, and if any
be rejected, other and proper material will be supplied
in lieu thereof without added cost. The city engineer
occupied the position that an architect employed by the
owner would occupy with reference to a building being
erected by a private owner, and of course the architect
may reject improper material without thereby absolv-
ing the materialman from his contract to furnish
proper material, or changing a materialman into a
subcontractor. Nor does the fact that Harmon gave
a bond to insure performance of his agreement in any-
wise alter the situation. Analyzing the lien statute in
the *Baker* case, Judge Ellis, speaking for the court,
said:

"No lien is accorded for labor performed in the
preparation of materials being furnished by the ma-
terialman, and at the instance of the materialman. This
seems plain from the language of the first clause of
the section. All doubt, if there could be any, is re-
moved by the next clause of the same section, which
makes only the contractor, subcontractor, architect,
builder, or person having charge of the construction,
the agent of the owner for the purpose of establishing
the lien. The statutory agency is confined to the per-
sons named. A materialman is not one of them. . .

"Betts merely furnished the sand and gravel used
in the work, just as someone else furnished the cement,
and still another the steel. If he was a subcontractor,
then every materialman would fall within that class
and the distinction manifestly intended by the statute
would be obliterated. He was not a statutory agent
of the owner by any construction of the statute, how-
ever liberal. To hold that he was, would be to legis-
late and not to construe."

The giving of a bond on a contract to perform pub-
lic work is for the purpose of providing security for

those who would be entitled to a lien if the work were private, and to claim under such bond one should be in a position to protect himself by a lien if the work were private in its nature. *American Sav. Bank & Trust Co. v. National Surety Co.,* 104 Wash. 663, 177 Pac. 646. And therefore if one employed by a materialman may not claim a .lien when the work is of a private nature, he cannot claim under the bond given where the work is public. In the *Baker* case the subcontractor is defined as ''one who takes from the principal contractor a specific part of the work,'' which definition seems to be in accord with the earlier case of *Young Men's Christian Association v. Gibson,* 58 Wash. 307, 108 Pac. 766. In *Finlay v. Tagholm,* 62 Wash. 341, 113 Pac. 1083, it was said:

''If one who furnishes the sashes, doors and glass for a building is a subcontractor, every materialman would fall in that class, and such construction would nullify the plain terms of the statute. The argument that the contract to furnish the material is an entirety, and that it is difficult to comply with the statute, is one that should be addressed to another department of the state government.''

In other jurisdictions, there may be other rules, but under the rule established in this state, Harmon was a materialman; and appellants, being his employees, had no right under the bond, just as they would have had no right of lien had the work been other than a public one.

Appellants' second contention, that they should recover under the rule laid down in *Puget Sound State Bank v. Gallucci, supra,* appears to rest upon the theory that there is something in the language of the bond in excess of that required by the statute, or in the language of the contract, which applies to one performing labor for, or furnishing supplies to, a ma-

terialman. The holding of the *Gallucci* case is that
the contract there considered required the contractor
to pay all just debts, dues, and demands incurred in
the performance of the work, and as the bank there
suing had advanced money to the contractor with
which he had discharged such debts, dues and demands,
and as the bond guaranteed the faithful performance
of all the provisions of the contract, therefore, the
bank stood in the shoes of those whose claims its money
had paid, and it might recover on the bond to the ex-
tent that it proved that its advances had paid claims
which were protected by the bond.

We fail to see how this rule can help appellants, and
fail to discover any language in the bond or contract
which, by any reasonable construction, can be held to
mean that the bonding company, the contractor, or
either of them, has undertaken to pay the laborers or
mechanics who are employed by a materialman. The
contract, which has been liberally quoted, provides, of
course, that the contractor shall furnish, at his own
expense, all material, labor, etc., and shall show to the
satisfaction of the city of Kent that all just debts due
to laborers, mechanics, materialmen, and persons who
have supplied the contractor or any subcontractor
with material or goods entering into the work, have
been paid; but, should the language be construed other-
wise, it would not help appellants in this case, because,
if truck hire owing by a materialman be in any way
covered by the bond, it must be by reason of the lan-
guage of the statute "and pay . . . all persons
who shall supply such person or persons or subcon-
tractor with provisions and supplies for the carrying
on of said work." In *Hurley-Mason Co. v. American
Bonding Co.,* 79 Wash. 564, 140 Pac. 575, we said:

."This question comes at least very near, if not
quite, being answered in favor of respondent by our

decision in *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337, where it was held that a bond containing these conditions and given under this statute, secured the value of the services of teams with drivers furnished to the contractor by a third person. Some observations were there made likening such service to labor, but the real ground upon which the holding rests is that the furnishing of the services of teams and drivers was the furnishing of 'supplies,' within the meaning of the law and the conditions of the bond.''

See, also, *Ledingham v. Blaine,* 105 Wash. 253, 177 Pac. 783, and *Bishop v. Ryan Const. Co.,* 106 Wash. 254, 180 Pac. 126. The statute covering the furnishing of supplies, Rem. Code, § 1159-1, reads:

''Every person, firm or corporation furnishing materials, supplies or provisions to be used in the construction, performance, carrying on, prosecution or doing of any work for the state, or any county, city, town, district, municipality or other public body, shall, not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor or agent of any person, firm or corporation having a subcontract for the construction, performance, carrying on, prosecution or doing of such work, deliver or mail to the contractor a notice in writing stating in substance and effect that such person, firm or corporation has commenced to deliver materials, supplies or provisions for use thereon, with the name of the subcontractor or agent ordering or to whom the same is furnished and that such contractor or his bond will be held for the payment of the same, and no suit or action shall be maintained in any court against the contractor or his bond to recover for such material, supplies or provisions or any part thereof unless the provisions of this act have been complied with.''

The record fails to show that any such notice was here given to the contractor, and no contention is made

that there was any attempt to comply with this statute. The judgment is affirmed.

Holcomb, C. J., Main, Mount, and Mitchell, JJ., concur.