## 56603. BALBOA INSURANCE COMPANY v. FULTON COUNTY.

SMITH, Judge.

We affirm the trial court's grant of Fulton County's motion for summary judgment.

On December 4, 1974, Fulton County and Sanson Corporation entered into a contract obligating the latter to construct the Chattahoochee River Park Project for the total consideration of $150,000. A provision of the contract stipulated: "Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the

Contract Sum to the Contractor as provided in the Conditions of the Contract as follows: On or about the first day of each month 90 (ninety) per cent of the proportion of the Contract Sum properly allocable to labor, materials and equipment incorporated in the Work and 90 (ninety) per cent of the portion of the Contract Sum properly allocable to materials and equipment suitably stored at the site or at some other locations agreed upon in writing by the parties, up to the 1 (one) days prior to the date on which the Application for Payment is submitted, less the aggregate of previous payments in each case." Also on December 4, 1974, appellant Balboa Insurance Company, for compensation, executed performance and payment bonds in favor of Fulton County with respect to the construction contract between Sanson and the County, which contract was expressly incorporated into and made part of the bonds.

Between January 13, 1975, and June 27, 1975, Fulton County made six progress payments to Sanson, totaling $113,553. Each payment was certified as follows, upon Sanson's application for payment, by the architect designated in the construction contract, Donald C. Hodges: "I certify that I have verified this Periodical Estimate and that to the best of my knowledge and belief it is a true and correct statement of work performed and materials supplied by the Contractor and that the Contractor's certified statement of his account and the amount due him is correct and just and that all work performed and all materials supplied as included in this Periodical Estimate are in full accordance with the terms and conditions of the contract documents and authorized changes thereto." On August 19, 1975, Fulton County, as owner, decided to terminate the construction contract and notified Balboa and Sanson accordingly. On August 28, 1975, Fulton County delivered to Balboa a notice of Sanson's contractual default and requested Balboa to comply with its obligation under the performance bond by either remedying Sanson's default or promptly completing the construction contract. Balboa declined to comply, and Fulton County brought this suit.

The trial court found Balboa liable as surety and granted the county's motion for summary judgment.

Balboa's appeal alleges that its liability as surety was discharged because the county had increased Balboa's risk by making $113,553 in payments to Sanson, an amount which exceeded the total value of the work done on and materials incorporated into the project. We assume for the purpose of this appeal that Fulton County's progress payments exceeded the value of Sanson's performance; nevertheless, Balboa's appeal must fail because the county's payments to Sanson were in compliance with the parties' contractual agreement. *Massachusetts Bonding & Ins. Co. v. Realty Trust Co.*, 137 Ga. 693 (4) (73 SE 1053) (1911); *Dunlap v. C & S DeKalb Bank,* 134 Ga. App. 893 (4) (216 SE2d 651) (1975). The general rule is thusly stated in 127 ALR 77: "[W]here a construction contract requires, as a condition of payments to the contractor, a certificate or estimate of an architect, engineer, or other person designated in the contract, showing the amounts due, the owner is not responsible, as against the surety on the contractor's bond, for the mistakes of the architect or engineer, and the surety is not discharged from liability to the owner by reason of payments made in good faith in accordance with overestimates or erroneous certificates, although such payments exceed, in fact, the sums due under the contract."

We find the following holdings to be persuasive and dispositive of this appeal, in accordance with the general rule stated above: "And even conceding that [the inspector's] estimates paid by plaintiff [the owner] exceeded 85% of the work done, we do not think he ought to lose his security because of an error of judgment by the inspector. Plaintiff was not a contractor, and was not competent properly to estimate the progress of the work. He had no means of knowing whether or not he was making payments in excess of the contract rate. If plaintiff paid more than he should, it was merely because he paid the vouchers approved by the inspector, as he was obliged to do under the terms of the contract; if he had refused to do so, the surety might, with some propriety, have complained that his action was prejudicial to its interest. [The inspector's] estimates were binding on the parties to the contract; the appellant [the surety] was

equally bound, and cannot charge plaintiff with responsibility for errors made by the inspector." Phillips v. American Liability & Surety Co., 309 Pa. 1, 11 (162 A 435) (1932). " '[T]he architect was, to such an extent, the arbitrator on behalf of both parties in the matter of the determination of the question as to when the certificates for payment should be issued that his decision in the matter binds the surety for the contractors, and the surety is not in a position to complain where the payments were made by the owner to the contractors upon certificates issued by the architect, in the absence of actual fraud or collusion between owner, contractors, and architect.' " Barton v. Title Guaranty & Surety Co., 192 Mo. App. 561, 567 (183 SW 694) (1916). "[T]here is no proof of record that PHP [the owner] deviated from or violated the terms of the contract. The contract specifically provided that payments were to be made to the contractor on the basis of certificates of estimates furnished by the named architect. The owner and lender were absolved from any responsibility as against the surety for any mistakes, errors and omissions of the architect in preparing the certificates. There is no allegation or showing of any collusion in this regard between PHP and the Bank [the lender] on the one hand and the architect on the other. The record reflects no violation of, deviation or departure from the terms of the contract by the owner PHP in advance of the default of the contractor." National American Bank of New Orleans v. Southcoast Contractors (La. App.) 276 S2d 777 (1973). See also New Haven v. National Steam Economizer Co., 79 Conn. 482 (65 A 959) (1907); Fergus Falls v. Illinois Surety Co., 112 Minn. 462 (128 NW 820) (1910); and Y. M. C. A. v. Gibson, 58 Wash. 307 (108 P 766) (1910).

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

SUBMITTED SEPTEMBER 13, 1978 — DECIDED NOVEMBER 16, 1978 — REHEARING DENIED DECEMBER 5, 1978 — 

*Palmer & Krontz, J. Larry Palmer, Chris C. Howard, Jr.,* for appellant.

*Webb, Young, Daniel & Murphy, Harold T. Daniel, Jr.,* for appellee.