BARTHOLOMEW SCANNELL &. another *vs.* HUB BREWING COMPANY.

Suffolk. January 25, 1901. — March 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

One who files a petition to enforce a mechanic's lien, under an entire contract to perform and furnish certain labor and materials for a round sum, on which a payment on account has been made, and who in his petition credits one half of the payment upon the sum due to him for labor and the other half upon the sum due for materials, may be allowed to amend his petition by crediting the whole amount of the payment upon the sum due for materials and claiming the whole amount due to him for labor without deduction, the statement in his petition being a narration which can be corrected, and not an offer or an appropriation. The petitioner's understatement of his claim for labor, subsequently corrected, comes within the provision of § 8 of Pub. Sts. c. 191, that the validity of the lien shall not be affected by an inaccuracy, not wilful, in stating the amount due for labor or materials.

A mechanic's lien may be established for labor performed in making, under an entire contract for a round sum, the apparatus and appliances for a brewery, to be inserted in the building and connected together by pipes, although part of the labor was performed in the petitioner's shop in another city, and the final connecting of the various appliances by pipes in the brewery may have been done by persons other than the petitioner.

PETITION to establish a mechanic's lien upon the respondent's brewery and the land on which it stands, at Roxbury in Boston, to secure payment of a claim of $5,663.02, with interest thereon, alleged to be due for labor and materials performed and furnished in the erection of said brewery from April 28 to November 8, 1898, inclusive, filed February 6, 1899.

At the trial in the Superior Court, before *Bond*, J., the following facts appeared: The labor and materials were furnished under an entire contract between the petitioners and one Adolph Segal. The respondent admitted that said Segal had authority from and rightfully was acting for the respondent in procuring from the petitioners such labor and materials, and that they fully performed said contract.

The contract began as follows:

" That the parties of the second part [Scannell & Wholey of Lowell], for and in consideration of the hereinafter stipulated sum, agree to furnish, deliver and erect for the party of the first part [Adolph Segal] in the new brewery of the Hub Brewing Company, located in the said city of Boston, Three Horizontal Return Tubular Boilers set up in brick work with all pipe connections, and built as described in the specifications bearing date of March 10, 1898; also all the Tank Work, Bins, Hoppers; etc., embracing the Hop-Jack, Mash Tub, Collecting Tank, Malt Scale Hopper, Meal Scale Hopper, Hopper for Cyclone Dust Collector, Twin Bin for Rice and Ground Malt, and Receiving Bin for Malt Storage Elevator, all as described in specifications bearing date of March 10, 1898, and as shown on the drawings referring thereto. . . . All materials and workmanship to be of the very best, complete in every particular, and be furnished and paid for by the parties of the second part. . . ."

The provision as to the contract price was as follows:

"For and in consideration of the true and faithful performance of all the work herein contracted for, the party of the first part agrees to pay unto the parties of the second part the net sum of eight thousand three hundred dollars ($8,300)."

It was shown by the petitioners that the formalities required by statute were complied with by them; that the value of the labor performed and furnished by them under the contract at and for the brewery of the respondent, on and before November

8, 1898, was, as alleged, $5,663.02; that the entire contract price for labor and materials was $8,300; that $2,000 was paid upon the contract in two payments of $1,000 each; that, before the commencement of legal proceedings to perfect and enforce the lien of the petitioners, no division was made of the $2,000, but the entire sum was paid, received and credited upon the contract, without distinguishing between labor and materials; that, in their lien statement and original petition, $1,000 thereof was credited upon the labor and $1,000 upon the materials, and that this was done through misapprehension of their rights, while they were proceeding to perfect and enforce an existing claim of lien, and not till then, and without any intention of waiving any rights in the premises. The original petition alleged that the amount remaining due for labor was $4,663.02. Before the trial of the case, the petitioners called up their amendment, filed February 16, 1899, increasing the amount claimed to $5,663.02, and due notice thereof was given to the sureties on the bond given by the respondent on May 29, 1899, to dissolve the lien. The judge, after hearing the respondent and the sureties as to the allowance of such amendment, allowed the same against the objection and exception of the respondent and the sureties, the judge ruling and finding that the amendment introduced no new cause of action.

The judge further ruled, that if the petitioners, in commencing legal proceedings to perfect and enforce an existing lien for the labor performed and furnished by them, incorrectly alleged in the lien statement and original petition the amount due them for labor, calling it less than it really was, owing to a mistake on their part as to the proper way of appropriating the payments, the validity of their lien for the true amount due for labor would not be affected thereby, if the petition was duly amended.

It was shown by the petitioners that all the labor performed and furnished by them was performed and furnished either on the respondent's premises, or in preparation therefor, but did not show how much labor was performed on any particular part of the work; that the labor from April 28 to July 6, 1898, was performed and furnished at the works of the petitioners at Lowell, Mass., and was employed in preparing material which

was intended for use in and actually used in the construction of the brewery; that the labor from July 6 to November 8, 1898, inclusive, was nearly all performed upon the premises of the respondent, but just how much was performed at Lowell and how much on the premises was not definitely shown, the account of the work at both places on each day under said contract being kept as one account in the petitioners' books.

The petitioners contended on the evidence that the work and materials performed and furnished by them were all so placed and connected with the brewery by the petitioners, for such a purpose, with such adaptations for pipe connections and otherwise, and with such effect, that they became permanent fixtures and part of the realty, and could not be removed without great difficulty and expense, and without serious injury to themselves and the building.

The respondent contended that such work and materials resulted in the making of articles of personal property not structurally connected with the brewery building, and that no lien therefor was maintainable. Evidence was introduced upon this subject.

On all the evidence the judge found that the materials furnished by the petitioners were so annexed to and connected with the realty that the petitioners were entitled to a lien for the labor performed thereon and in placing the materials in the building and in making the connections of the same to the building, and found that the lien for the amount claimed as due for labor, with interest from the date of the filing of the petition, was established.

The respondent asked for certain rulings, which the judge declined to give ; and the respondent alleged exceptions. The questions of law raised by the exceptions are stated in the opinion of the court.

*R. W. Nason*, for the respondent.

*C. H. Conant*, for the petitioners.

HOLMES, C. J. This is a petition to establish a lien for labor furnished under an entire contract for labor and material made with one Segal by the respondent's consent. Pub. Sts. c. 191, § 2. The entire contract price was $8,300. The value of the

labor was $5,663.02. There had been paid generally upon the contract $2,000 before the beginning of proceedings to assert their lien by the petitioners, and in the statement of their account and in their petition as originally filed, half this sum was credited upon the amount due for labor. At the trial the petitioners were allowed to amend their petition by striking out this credit of $1,000, and claiming the whole value of the labor as above stated. This was excepted to. And although the only exception before us is that of the respondent, (Pub. Sts. c. 167, § 85, *Driscoll* v. *Holt*, 170 Mass. 262,) we are content to assume for the purposes of decision that the question intended to be raised is open one way or another under the bill.

The respondent treats the credit as an appropriation of payments. Under an entire contract of course there is no such thing as an appropriation of payments to particular items of the entirety. But assuming that such an appropriation would be possible after it became material to discriminate, it could not be done by the creditor alone after the payment had been made. Moreover a pleading as such does not purport to be an appropriation. It purports to state the supposed effect of past transactions. It, and the statement of the account as well, is a narrative, not an offer. When found to be mistaken, it properly may be amended. The inaccuracy in the statement was within the saving of the statute. Pub. Sts. c. 191, § 8.

In fact the part payment had no effect upon the petitioners' rights. All that it did was to diminish the amount of the contract debt unpaid. The lien could not be enforced beyond, but it could be enforced up to that amount, and as the amount unpaid exceeded the total claim for labor the lien was unaffected. *Casey* v. *Weaver*, 141 Mass. 280. In *Driscoll* v. *Hill*, 11 Allen, 154, decided under an earlier state of legislation, the contract was said not to have been entire, and it did not appear what part of a general payment was attributable to the debt for labor. The petitioners were right in their law, and the amendment properly was allowed. *Burrell* v. *Way*, 176 Mass. 164.

The labor was done under an agreement to " furnish, deliver and erect," in the respondent's brewery in Boston, boilers " set up in brickwork, with all pipe connections " ; " also all the Tank work, Bins, Hoppers etc., embracing the Hop-Jack, Mash Tub,

Collecting Tank, Malt Scale Hopper, Meal Scale Hopper, Hopper for Cyclone Dust Collector, Twin Bin for Rice and Ground Malt, and Receiving Bin for Malt Storage Elevator," according to specifications.    Part of the work was done at the petitioners' works in Lowell in preparing material to be used in the construction of the brewery.   It did not appear how much labor was spent on any particular part of this work, and the respondent contends that therefore if the lien fails for any portion of the labor it fails altogether, and that it must fail in part because some of the enumerated articles were personalty, so that work spent upon them was not furnished in the erection of a structure upon real estate within Pub. Sts. c. 192, § 1.   The question was raised by requests for rulings that the hop-jack, malt scale hopper, meal scale hopper, and the cyclone dust collector were personal property, etc.    The court found that all the articles were so annexed to and connected with the realty that the petitioners were entitled to a lien for the labor performed upon them, and refused the requests.   The judge also refused to rule that the petitioners could not recover for work done at Lowell upon the boilers, tanks and sheet iron work.

Whatever test be adopted to decide whether labor is performed in the erection of a building, *Boston Furnace Co.* v. *Dimock*, 158 Mass. 552, the judge, to say the least, was warranted in finding that the labor furnished by the petitioners satisfied the test.    All the different objects mentioned were parts of the brewing apparatus which, presumably at least, the shell of the building was erected to receive.   They were the point and object of putting up the walls and floors.   There was testimony that most of them were riveted to the building directly or indirectly, and that they all were connected together by pipes.   They were built up in the building and could not be got out except by taking them to pieces, which would seem from the testimony of the respondent's witnesses to be commercially impracticable. " It would be far cheaper to get new ones."   If any object was more movable than the others, it none the less was an integral part of one original whole, which as a whole was a building and real estate.   Whether they were connected by the petitioners or by others, the petitioners' contract and their work contemplated that the connection would be made, and the petitioners' contract

was not performed until the objects were irrevocably within the building and manifestly on their way at least to become a part of it.

The consideration last mentioned shows that the different articles do not encounter the difficulty dealt with in *Tracy* v. *Wetherell*, 165 Mass. 113. From the point of view of the mechanics' lien law the contract was not merely a contract for the sale of a chattel which the petitioners might or might not make themselves and the respondent might use where it chose. The objects furnished were made, and presumably had to be made, by the petitioners, and with special reference to the particular place. No doubt, generically, they were objects well known in the brewery business, but, as they were furnished according to minute specifications and drawings, the natural inference is that their particular form and details rendered it necessary to make them from the beginning in order to meet the requirements. Indeed, it is said in the specifications of the contract that "all the . . . labor of every kind required for the construction, erection and proper finishing of the work . . . must be furnished by" the petitioners. After their parts were made and fitted the tanks, bins, etc. had to be constructed in the building. They were practically irremovable when constructed, and, whether connected with the building by the petitioners or by others and before or after the petitioners had finished their part of the work, were put where they were for the purpose of being connected, and either way equally were furnished for a part of the building into which they were incorporated. *Turner* v. *Wentworth*, 119 Mass. 459. As the labor in Lowell was contemplated by the contract and was a necessary step to the making of their final addition to the building by the petitioners, it is within the security of the lien. *Wilson* v. *Sleeper*, 131 Mass. 177, 179. *Daley* v. *Legate*, 169 Mass. 257. It seems unnecessary to cite further authority or to go more into detail to show that the exceptions cannot be sustained. See *Allen* v. *Mooney*, 130 Mass. 155 ; *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, 522.

*Exceptions overruled.*