AINSWORTH MANSON & another *vs.* BRIDGET M. FLANAGAN.

Middlesex.    March 13, 1919. — June 17, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Contract,* Consideration.    *Mechanic's Lien.*

A contractor had made an agreement with a landowner to build a house on his land for $7,000 and to furnish all the material and labor, and a subcontractor, who had agreed with the contractor to do the stair work for the house, furnishing labor and material for an entire price of $120, made a demand upon the contrac-

tor for payment within thirty days from the completion of his work, and, payment having been refused, gave notice to the landowner that he intended to enforce a mechanic's lien on the property unless the landowner paid his bill, whereupon the landowner agreed in writing to pay to the subcontractor the amount due on the subcontract for the stair building, although the subcontractor gave no notice of an intention to claim a lien for materials. In an action by the subcontractor against the landowner on this contract, there was evidence that the value of the labor alone could be distinctly shown and that, at the time when the defendant agreed to pay the plaintiff's bill, the plaintiff could have filed a valid lien for the labor performed or furnished under his contract, although the value of the labor formed but a small part of his entire claim. After a verdict for the plaintiff, it was *held* that under R. L. c. 197, § 2, a lien for labor only could have been enforced against the defendant's property, and that the plaintiff's forbearance to enforce his claim for the labor was a valid consideration for the defendant's promise, the mere inadequacy of the consideration, in the absence of fraud, being no defence to an action on the defendant's promise to pay the plaintiff's whole claim.

CONTRACT by the members of a partnership engaged in the business of stair builders, under the firm name of Manson and MacPhee, on a contract in writing to recover the sum of $120 as the contract price for certain stairs set into the defendant's house by the plaintiffs under a contract with one Louis Fisher, who had agreed to build a four-family house for the defendant on Willow Street in Waltham. Writ dated March 17, 1916.

The contract sued upon was as follows:

"Allston, Mass., Oct. 21   1915
Tel., Brighton, 161
Mr. Lewis Fisher Co

To Manson & MacPhee, Dr.
Stair Builders
[Cut of Stairs]     Piazza Stock, Mantels, Cabinet Work, Etc.
124 Western Avenue, Allston, Mass.
to Stairs in Willow St. House                    120  00
I have to agree to pay your money this day October 26.
                                          Mrs Flanagan
Bellevue 656-W                            Ainsworth Manson"

In the Superior Court the case was tried before *Lawton,* J. Ainsworth Manson, one of the plaintiffs, testified that he and MacPhee had been in partnership as stair builders for about five years; that he did not make the contract with Fisher; that the contract with Fisher was made by his partner, MacPhee; that the

work was finished on September 28, 1915, that his partner told him to go to the defendant for the money; that he called on her several times between September 28, 1915, and October 26, 1915; that on October 26, 1915, he told the defendant that his time had run out; that the only thing he could do, having a claim on the house, was to get a mechanic's lien; that he said to her, "That won't hurt your property or hurt you any. You can release that afterwards;" that she said, "Well, I will go up to see Mr. Burns;" that they went but that Mr. Burns was not at home; that he told her she would have to sign a paper agreeing to pay for the stairs furnished on the contract between Manson and MacPhee and Fisher, or that he would put a mechanic's lien on her house and that she would have to sign before the next day or the lien would be put on; that she did sign on October 26, 1915, so that no lien would be placed by Manson and MacPhee upon her property.

The defendant testified that she made a contract with Louis Fisher to build for her a four-family house for $7,000, which was to include labor, materials, etc., and that Fisher was to complete the house for that price; that she had made no agreement with the plaintiffs in regard to the stairs; that Manson called on her several times and asked her to pay for the stairs and that on October 26, 1915, Manson called and threatened to put a mechanic's lien on her property unless she signed a paper agreeing to pay for the stairs and that she must sign at once or he would put on a lien and that on October 26, 1915, she signed the paper.

Other evidence is described in the opinion.

At the close of all the evidence the defendant asked the judge to rule as follows: "The contract for the stairs and labor to put them in place having been an entire contract and the plaintiffs not having been able to distinctly show the value of the labor and not having given notice in writing before furnishing the materials to the owner of the property to be affected by the lien that they intended to claim such lien — the plaintiffs had no lien legally enforceable against the defendant at the time the defendant signed the paper and so there was no consideration for her agreement to pay them the amount they claimed."

The judge refused to make this ruling, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $135. The defendant alleged exceptions.

The case was submitted on briefs.

*J. J. Burns*, for the defendant.

*I. M. Huggan*, for the plaintiffs.

CARROLL, J. The defendant made a contract with Louis Fisher to build a four-family house for the sum of $7,000. Fisher was to furnish all material and provide all the labor. The plaintiffs agreed with Fisher to do the stair work on the premises, furnishing labor and material for the entire price of $120. This work was completed September 28, 1915; demand for payment was made on Fisher, and refused. Within thirty days from the completion of the work, on October 26, 1915, one of the plaintiffs called on the defendant and informed her that he would place a lien on the premises unless she agreed to pay their claim. Thereupon the defendant agreed in writing to pay the amount due on the contract. The plaintiffs gave no notice of their intention to claim a lien for material. The jury found for the plaintiffs.

It is provided by R. L. c. 197, § 2, that "If such agreement is for labor performed or furnished and for materials furnished under an entire contract and for an entire price, a lien for the labor alone may be enforced, if the value of such labor can be distinctly shown; but it shall not be enforced for an amount greater than the entire contract price." Under this section a subcontractor may maintain a lien for labor if its value can be distinctly shown, even if the contract was entire and there was an entire price for both labor and material, and although no notice of an intention to claim a lien for material was given. *Casey* v. *Weaver*, 141 Mass. 280. *Moore* v. *Erickson*, 158 Mass. 71. *Scannell* v. *Hub Brewing Co.* 178 Mass. 288, 292.

There was evidence that the value of the labor could be distinctly shown; and that at the time when the defendant agreed to pay the plaintiffs they could have filed a valid lien for the labor performed or furnished, under their contract, in the erection of the building. The defendant's promise to pay the plaintiffs was based upon a legal consideration; and, although the lien could be enforced for the labor only and the value of the labor formed but a small part of the entire claim, the mere inadequacy of the consideration, in the absence of fraud, is no defence to the plaintiff's right to recover. *Dean* v. *Carruth*, 108 Mass. 242.

*Exceptions overruled.*