Zottoli, J.
The plaintiff seeks to recover from the defendants certain sums alleged to be due him because the defendants’ testatrix, for a new consideration given her by the plaintiff in August 1931, guaranteed the payment of, or promised to pay him, the sums due on two promissory notes given by one William F. Spear to the plaintiff and endorsed by the defendants’ testatrix, after maturity, for the purpose above stated. The plaintiff’s declaration contains five counts. We are not now concerned with counts numbered one and two of the plaintiff’s declaration, in which the plaintiff sought recovery against the defendants on the theory that the defendants ’ testatrix was liable as an endorser of negotiable instruments because these counts were waived by the plaintiff before the case was reserved *610 by the trial judge. Nor need we be specifically concerned with counts three and four, because all questions arising out of these counts are also involved in count five, which contains all the essential allegations to the effect that the promise of the defendants’ testatrix to pay the alleged notes was made for her own benefit.
The defendants’ answer, so far as is now pertinent to this appeal, is a general denial, and further “that the contract relied upon was a contract within the statute of frauds”, in that “the promise, contract or agreement of the defendants’ testatrix was a special promise to answer for the debt, default or misdoings of another, and that said promise, contract or agreement nor any memorandum thereof in writing was not signed by the defendants’ testatrix or by any person by her lawfully authorized”.
There was evidence that the plaintiff had loaned one thousand dollars to one Spear on April 27, 1918 and had received said Spear’s demand note of that date for the same amount, providing for the payment of interest at six per cent; that the payment of said loan was secured by the deposit of ten shares of stock of the Forest City Trust Company, of Portland, Maine, as collateral; that on July 28, 1921, the plaintiff loaned an additional three thousand dollars to said Spear, and as collateral for said loan received Spear’s demand note of the same date for a like amount, bearing interest at eight per cent, and three bonds of the Portland Railroad Company, each of the face value of one thousand dollars; that interest was paid on both loans up to and including May 27, 1931; that in the fall of 1930 the plaintiff returned to said Spear the stock and bonds above referred to under the specific agreement of said Spear to substitute stock of the Fidelity Trust Company of Portland, Maine, to be bought with the proceeds of the original collateral stock and bonds given at the time the notes were *611 executed; that said Spear did not return the Fidelity Trust Company stock to the plaintiff; that said Spear was the holder of said shares of stock of the Fidelity Trust ,Comr pony from November 15, 1930, to September 19, 1932, when they were transferred into the name of the defendants ’ testatrix; that in August, 1931, the plaintiff’s wife, who was his authorized agent, learned that Spear had hypothecated the stock to one Willard; that plaintiff’s wife, as his agent, then went to the defendants’ testatrix and discussed the situation with her, and finally the deceased agreed to pay the notes if the plaintiff would “agree not to bother Spear, to let him alone”, which the plaintiff’s wife, acting on his behalf, agreed to do; that the defendants’ testatrix then added that ‘ ‘ she did not have a nickel of her own or a penny of her own, and that she would pay the notes when Ed, her husband died” ; that in pursuance of this agreement the defendants’ testatrix later put her name on the back of both notes, as indorser; that after August, 1931, the plaintiff refrained from collecting any of the principal or interest on the notes from Spear, nor took any action to recover the Fidelity Trust Company stock. It further appeared in evidence that the husband of the defendants’ testatrix died on October 10, 1934, and that the notes have not been paid.
It appears from the report that before the plaintiff rested his case he moved to be permitted to write above the name of Isabel S. Kelly, on the back of the note, the words, “I agree to pay the within note”, and that the court denied this motion; whereupon the plaintiff moved that he “be permitted to write above the name of Isabel S. Kelly the words, ‘I agree to pay the within note, such payment to be made after the death of my husband’ ”; that the court also denied this motion, and that the plaintiff duly claimed a report of the court’s action thereon. In due time, the plaintiff filed eight requests for rulings, which were not passed on by the *612 court. The defendants filed twenty-five requests; three of these were allowed;' four denied without comment, and those remaining were denied “as inapplicable to facts found.”
The court made the following special findings:
“I find that the agreement between the plaintiff and the defendants’ testatrix was not a promise to pay the debt of another but an original contract between the parties.
I find the plaintiff agreed and promised to forebear to sue the original debtor on the notes at the request of the defendants’ testatrix who agreed and promised to pay the notes upon the death of the husband. The plaintiff in pursuance of the said agreement did forbear to sue the original debtor on the notes and at no time did sue the original debtor.
I find there was a good and valid consideration between parties ;for the original contract between the plaintiff and the defendants’ testatrix. That the husband of the defendants ’ testatrix died and that the said testatrix died that the said testatrix and the defendant’s have failed to pay the amount of the notes. The death of Isabel S. Kelley occurred after the death of her husband.”
The court found for the, defendants on the third and fourth counts and for-the plaintiff on the fifth count of the plaintiff’s declaration.in the sum of $4000 with interest only from the date of the writ. Both parties, seasonably claimed reports, which have been consolidated into a single report. The appeal raises a number of contentions by both plaintiff and defendants. .The defendants’ chief contentions are (1) that the promises in question were special promises to answer for the debt, or default of another; and (2) that “there was no sufficient memorandum or note of such agreements in writing to satisfy the Statute of Frauds”, and therefore the court erred in finding for the plaintiff. On the other hand, the plaintiff’s chief contentions are, (1) *613 that the contract does not come within the Statute of Frauds, because the court was warranted in finding* that “the consideration for the promise was for the benefit of the promisor”; (2) that if it was a contract within the Statute of Frauds, then the court erred in denying the plaintiff’s motion for leave to write in the guaranty agreed upon, as hereinbefore stated; and (3) that the court erred in denying the plaintiff’s right to interest on the notes from the date of its last payment.
The first and second contentions raised by the plaintiff and defendants cover the same legal field, and may be considered together.
Before dealing with the various specific contentions above recited it may be useful to explore some of the underlying legal approaches thereto. This case presents the “embarrassments” which Lord, J., in the case of Rodocanachi v. Buttrick, 125 Mass. 134 at page 136 pointed out, “might have” been presented had the court not found a way to circumvent them. The “embarrassments” alluded to apparently arose because of conflicting judicial concepts arising out of the application of the paroi evidence rule; certain aspects of the law merchant; and the Statute of Frauds. One would have to write at considerable length to properly set out the divergent views and the various methods taken by different courts to overcome these so-called embarrassments. It will be sufficient for our purposes to set out the treatment and position of our courts in the matter. First, as to the paroi evidence rule. This obstacle was overcome by holding that where an endorsement in blank is put on a promissory note after its delivery by one not an original party to the instrument, an equivocal situation is presented which may be explained by oral evidence. This principle is well stated by Shaw, C. J. in the case of Essex Company v. Edmonds, 12 *614 Gray 273, at 277, where he points out that; “being a blank endorsement, of course no consideration appears on the face of it; but if it was put on after delivery, an instrument so endorsed in blank authorizes the holder to go into proof of the fact which such blank shows was intended to be supplied ; it may be proved by paroi testimony that there was a consideration as between the holder and the guarantor, and what the consideration was, and the blank filled in accordingly. And cf. Welch v. Bombardieri, 252 Mass. 84 at Page 87, where Waite, J., points out that before the paroi evidence “rule can be applied, the court must be sure that it has before it a written contract, a writing or writings signed by the parties and intended by them as a statement of their complete agreement”. — Mar does the paroi evidence rule apply — “when the language is ambiguous by reason of unexpressed terms, and resort must be had to extrinsic evidence to determine the meaning and extent of the language employed by the contracting parties. Such evidence is admissible not to vary what is written, but to complete the instrument”. cf. Savage v. Welch, 246 Mass. 170, 180 and New Hampshire National Bank v. Garage Equipment Co., 267 Mass. 483 where the irregular endorser signed before delivery and was held to the liability of an endorser. Also cf. Wesley v. Cobb, 165 Mass. 503; Aronson v. Nuremberg, 218 Mass. 376 and Maglione v. Penta, 266 Mass. 413, 418 where the paroi evidence rule was held to apply. And cf. also Goodman v. Gaul, 244 Mass. 528 where the court held that if one was not an original party but had endorsed the note after it had been negotiated he could show the circumstances under which the endorsement was made to determine whether the defendant was an accommodation endorser, and if so, whether he accommodated the maker, or the plaintiff, who was the payee named in the note. This brings us .to the second class of embarrassments above *615 spoken of, that is, the embarrassments arising from certain aspects of the law merchant. These embarrassments chiefly arose from a failure to perceive the difference between the position of a holder in due course to whom such a note was negotiated; an accommodated party who had been accommodated without consideration; and a guarantor who was not a party to the note when issued but who signed after delivery at the request of the plaintiff holder upon a separate consideration. We have already seen the position of the two classes first mentioned from the cases already cited. The position of one in the last class above mentioned is well stated in the case of Braintree v. Willis, 8 Met. 504 at pages 508 and 509, where the court points out that one who thus receives an endorsement is not in the position of “a holder”, as the term “holder” is generally understood in the law merchant; nor is the endorser under the liability of “an endorser” as that term is generally understood in the law merchant; “for the note” (under the circumstances above related) — is not negotiated, nor a title made through it, “as required by the law merchant when one is to be held as a strict endorser.” As was pointed out at page 509, “to hold the party, — as promisor, where the name alone is written, it must appear that he made the promise at the time the note itself was made; otherwise, he may either not be chargeable at all, or be chargeable as surety or guarantor according to the facts proved”. This brings us to a consideration of when one may “be chargeable as surety or guarantor ’ ’ and thus to the ‘ ‘ embarrassments ’ ’ arising out of the legal obstacles presented by the divergent views taken by the courts of various jurisdiction with reference to the application of the Statute of Frauds to the situation presented in this report. Tersely stated; some courts hold that the promise made by an endorser after the instrument has béen delivered is in effect a promise to pay the debt of *616 another and therefor within the provisions of the Statute of Frauds. Furthermore these courts hold that as the signature verifies the writing over it, the writing must be there at the time of signing, otherwise the statute is not complied with. 'Our1 court, from an early date has taken a contrary view. We need not go into the matter more fully at this point as we shall consider the position taken by the courts of our Commonwealth in discussing the specific contentions of the parties to this appeal.
The first specific question presented is whether the agreement is one within the term Statute of Frauds. We think it is, and as a new trial must be ordered it may be useful to trace the legal principles which lead us to the conclusion stated on this issue and also the others above referred to. It is apparent from the court’s findings and the treatment of the defendants’ requests pertinent to the Statute of Frauds that the court concluded the agreement testified to did not come within the statute because there was “an original contract between the parties” (which in substance amounted to nothing more than an agreement to forbear), which the plaintiff kept but the defendants’ testatrix breached. There is evidence which supports the court’s findings relating to the agreement to forbear. It is well established law in this Commonwealth that mere forbearance is not sufficient consideration for the promise to pay the debt of another. But we have more than mere forbearance in this case. The facts warranted a finding, not only of an agreement to forbear, but also forbearance in consequence of this agreement. Under ordinary contract principles this suffices to make a binding contract. Manter v. Churchill, 127 Mass. 31. Mecorney v. Stanley, 8 Cush. 85. Barber v. Rathvin, 250 Mass. 479. Spillane v. Yarnolowicz, 252 Mass. 168, 171.
*617 1 Williston on Contracts, 300, §136, and note #91. cf. Tenney v. Prince, 7 Pick. 243. And forbearance to enforce a claim for a time, in pursuance of an agreement to that effect, is sufficient consideration for a promise by another to pay even though the original defendant is not released. Boyd v. Freize, 5 Gray 552. Pelton v. Baker, 158 Mass. 349. Codman v. Dumane, 249 Mass. 451, 458. And see cases collected in Morris v. Gilman, No. 280726, Municipal Court of the City of Boston, 35 App. Div. Rep. 301. But, whatever may be the rule elsewhere (as to which see 1 Williston, Contracts, §469) it is well established in our Commonwealth that in order to withdraw the promise from the Statute of Frauds it must appear that the consideration of an agreement to forbear action against a third person, must not only be a legal consideration but that it must be for the promisor’s own benefit. As otherwise stated in the cases, “it must appear that the leading object or purpose and effect of the transaction was the purchase or acquisition by the promisor from the promisee of some property, lien or benefit which he did not before possess, so that the debt for which he is liable may fairly be deemed to be his own debt, contracted in such purchase or acquisition.” Dexter v. Blanchard, 11 Allen, 365. Furbush et al v. Goodnow, 98 Mass. 296. Nelson v. Boynton, 3 Met. 396. Ames v. Foster, 106 Mass. 400. Carleton v. Floyd, Rounds & Co., 192 Mass. 204. George Lawley & Son Corp. v. Buff, 230 Mass. 21. 2 Williston, Contracts, §476. cf. Paul v. Wilber, 189 Mass. 48. Manning v. Anthony, 208 Mass. 399. Manson v. Flanagan, 233 Mass. 150. Barnett v. Rosen, 235 Mass. 244. Washington Realty Co. v. Freedman, 263 Mass. 554, 560. Dondis v. Lash, 277 Mass. 477,486. Kahn v. Waldman, 283 Mass. 391. Colpitts et al v. L. C. Fisher Co., 289 Mass. 232 where the trial court found the consideration was such as to take the agreement out of the statute.
*618 Turning to the facts of this case, it appears that there is nothing in the evidence reported that shows a consideration running to the promisor sufficient to take the promise out of the operation of the statute. Neither does it appear that the promisor profited by reason of the promise. The mere ■fact that the bonds alluded to came to her possession after the death of the maker of the notes is not sufficient to bind her to the promise to pay, unless it appears that “the leading object” on the part of the promisor was to get the bonds and that she received them as part of the agreement, and in consequence of the promise. On the evidence before us it is conjectural how she obtained the bonds in question. The court therefore erred in concluding that the agreement in suit was not within the statute.
It is apparent that the court did not reach the consideration of the requests pertaining to the operation of the 'Statute of Frauds, because it found that the agreement was founded on a sufficient consideration to remove it from the provisions of the statute. The court’s error on this issue necessitates the ordering of a new trial because it may well be that the plaintiff may show a compliance with the requirements of the statute, even though he has not shown an original agreement not covered by the statute. As the issues raised pertinent to the indorsements will again be before the court on any rehearing, it may be useful to consider the court’s action m denying the plaintiff’s motion for leave to write the guaranty in the blank spaces over the indorsements on the back of the notes, and the rights of parties in the situation presented by the evidence reported. The right to fill blanks over a signature is not ordinarily derived from the court. Such a right arises as a result of authority granted by the signor of the paper. The defendant contends that unless the plaintiff was given authority to fill in the guaranty, neither he nor his privies had the right to *619 do so. We are inclined to accept the defendant’s contention as sound. But the law does not require that any particular form of words or acts must be resorted to, to confer authority. It may be found from express language and it also may be inferred or implied. The question whether authority has or has not been granted, in a legal sense, “is ordinarily nothing but the difference in the probability under the circumstances known to the actor and according to common experience, that a certain consequence or class of consequences will follow from a certain act. ’ ’ As was stated by Holmes, J., in the case of White v. Duggan, 140 Mass. 18, “the question when authority will be inferred, like the case of estoppel in pais, is simply one of degree”, and we may add that public policy may also, and sometimes does, dictate the extent to which one may act for another. Bent et al. v. Cobb, 9 Gray 397, 398. cf. Sanborn v. Chamberlin, 101 Mass. 409, 416. Whit v. Delquist Mfg. Co., 197 Mass. 427, 431. Huntington v. Knox, 7 Cush. 371. cf. Restatement of the Law, Agency, Ch. 2, § 24, comment b. And while courts, following a rule based on public policy rather than logic, have refused to permit a party to write in the contract intended by the parties, where a party to an instrument not governed by the law merchant writes bis name on the back of a paper under such circumstances as to make the signature ambiguous, “for conceivably he may be assigning his rights and promising nothing”. Gloucester Mutual Fishing Ins. Co. v. Boyer et als, A. S. (1936), 707, 711. Yet, in our Commonwealth, contrary to the prevailing rule in other jurisdictions (as to which see Hodgkins v. Bond, 1 N. H. 287) our court, in effect, has held that where a blank indorsement is made upon a note in the form of “a negotiable promissory note, by a third person, after the date of the note, the payee may write over the signature a guaranty thereof for any consideration, which the parole *620 proofs shall establish to exist, and the payee may maintain a suit upon the same, as a valid guaranty, thus supplying at once by paroi proofs, the consideration and also the written agreement.” Story, Promissory Notes, §§459, 474. Josselyn v. Ames, 3 Mass. 274. Ulen v. Kittredge, 7 Mass. 233. Moies v. Bird, 10 Mass. 436. Union Bank of Weymouth & Braintree v. Wills, 8 Met. 504, 509. Tenney v. Prince, 4 Pick. 385. Scott v. Calkin, 139 Mass. 529. Equitable Marine Ins. Co. v. Adams, 173 Mass. 436. Maksymink v. Puceta, 279 Mass. 346, 354. Kahn v. Waldman, 283 Mass. 391, 395. Gloucester Mutual Fishing Ins. Co. v. Boyer et als, A. S. (1936), 707, 711. cf. Gen. Laws (Ter. Ed.) C. 107, §58, Crawford’s Annotated Neg. Inst. Law 53. cf. Gen. Laws C. 107, §86, which is declaratory of the principles of the law merchant adopted by our court.
However, it does not follow from what has been said that the court erred in denying the plaintiff’s motions, that he be permitted to write the guaranty over the indorser’s name. When a person signs an instrument in blank, a strong inference arises therefrom that he authorizes the person to whom he delivers his signature, and his privies, to fill in the contract the signor made. The signing and delivery of the paper in blank may be found to be an invitation to the person to whom it is delivered, and those standing in his stead, to put the agreement into a valid form. This should be done when necessary before it is offered in evidence. It is the party’s right to fill in the paper and not a privilege granted by the court. Strictly speaking, when the right is duly exercised, the court has no control in the matter. It passes on the paper as offered in evidence. It has no authority to order any change in the writing presented in evidence. We are aware that in the case of Tenney v. Prince, 4 Pick. 385, and Josselyn v. Ames, 3 Mass. 274, the Supreme Court permitted the plaintiffs not only *621 to amend their declarations but also the guaranty over the indorsements, so as to meet the facts of the case disclosed by the appeal. The court, in the interest of justice, apparently exercised its discretion in permitting amendments to pleadings and in effect gave the plaintiffs an opportunity to fill in the guaranty proved. What a court, in its discretion, may do to prevent a failure of justice may be quite different from what it may be compelled to do in an equivocal situation. In the case before us there was no need of amending pleadings. All that the plaintiff had to do was to make his evidence fit the case stated in his declaration. In order that he might properly do so he had the right to fill in the guaranty authorized, provided he did so seasonably. The court could, in order to prevent a miscarriage of justice, permit the plaintiff to fill in the guaranty at any time during the trial (as the order of proof is in the discretion of the court), but it was not compelled to do so. In any event, no harm results from the court’s action in denying the plaintiff’s motion, as he still has an opportunity of filling in the guaranty authorized before it is again offered in evidence.
. As to the plaintiff’s remaining contention to the effect that “the court erred in failing to allow the plaintiff the amount of interest due upon the notes which the court found that the defendants’ testatrix had agreed to pay,” all that need be said is that the defendants concede, and we think rightly, that the plaintiff’s contention is sound and that the court erred in its finding relating to the amount of interest due, if there is found to be liability by reason of the guaranty. The rule is well established “upon the principles of the common law that interest is to be allowed where the law, either by express contract or by implication, makes it the duty of the party to pay over the money to the owner *622 without any previous demand on his part. ’’ President &c. City Bank v. Cutter, 3 Pick. 414. Dodge v. Perkins, 9 Pick. 368, 388. Foote v. Blanchard, 6 Allen 222. Brannon v. Hursell, 112 Mass. 63, 71.
New trial granted.